TRAVELERS PROPERTY CASUALTY COMPANY
OF AMERICA v PEAKER SERVICES, INC

Docket No. 315070. Submitted June 11, 2014, at Lansing. Decided July 22, 2014, at 9:00 a.m. Leave to appeal sought.

Travelers Property Casualty Company of America brought an action in the Livingston Circuit Court against Peaker Services, Inc., seeking a declaratory judgment regarding its contractual obligations to defend and indemnify Peaker Services under a commercial general liability (CGL) insurance policy. Peaker Services filed a counterclaim, seeking a declaratory judgment that Travelers was obligated to defend and indemnify it. The University of Michigan hired Peaker Services to install an electronic over-speed system at its central power plant in Ann Arbor. Included in the purchase-order agreement for the system was a clause stating that Peaker Services would be responsible for the costs to return university property to "as was" condition in the event that the power plant was damaged by Peaker Services personnel. In 2011, the university and its insurer commenced a breach-of-contract action against Peaker Services, alleging that the over-speed system was improperly calibrated, resulting in significant damage to the generator system. Peaker Services filed a claim with Travelers, asking Travelers to defend and indemnify it in the university's lawsuit. Travelers participated in the defense, but reserved the right to dispute coverage. Travelers commenced this action in 2012 to determine its obligation to defend and indemnify Peaker Services. Travelers moved for summary disposition, asserting that it did not have a duty to defend and indemnify Peaker Services in the university's lawsuit because Peaker Services's claim fell under the CGL policy's "contractual liability" exclusion. That exclusion provided that the policy did not provide coverage for bodily injury or property damage for which Peaker Services was obligated to pay damages by reason of an assumption of liability in a contract or agreement. The court, David J. Reader, J., granted summary disposition in favor of Peaker Services under MCR 2.116(I)(2), and subsequently entered an order granting judgment in favor of Peaker Services, holding that Peaker Services was entitled to coverage under the CGL policy. Travelers appealed.

The Court of Appeals *held*:

The contractual-liability exclusion precludes coverage for damages incurred by reason of the assumption of liability in a contract or agreement, but provides an exception to the exclusion when (1) the insured would have incurred liability irrespective of the contract or agreement, or (2) the insured assumed liability in an insured contract. The phrase "assumption of liability" plainly means the act of taking on the legal obligations or responsibilities of another, a conclusion that is supported by caselaw from other jurisdictions and relevant treatises. Assumed liability differs from liability arising from an insured's breach of his or her own contract in that the former connotes the taking on of additional liabilities in excess of those imposed on the insured under general law. Therefore, the contractual-liability exclusion does not bar coverage for all contract liability, but rather is limited to a special type of contract—one in which the insured has assumed the liability of another, i.e., a hold harmless or indemnification agreement. By agreeing to return the university's property to "as was" condition, Peaker Services did not enlarge its duty to exercise ordinary care in fulfilling its contract. Rather, it agreed to do no more than was imposed on it under general law. Therefore, the contractual-liability exclusion in the CGL policy did not preclude coverage, and the trial court reached the correct result.

Affirmed.

INSURANCE — COMMERCIAL GENERAL LIABILITY POLICIES — CONTRACTUAL-LIABILITY EXCLUSIONS — ASSUMPTION OF LIABILITY DEFINED.

The standard contractual-liability exclusion in a commercial general liability insurance policy precludes coverage for damages incurred by reason of the assumption of liability in a contract or agreement; the phrase "assumption of liability" means the act of taking on the legal obligations or responsibilities of another; the standard contractual-liability exclusion does not bar coverage for all contract liability, but rather is limited to a special type of contract—one in which the insured has assumed the liability of another, i.e., a hold harmless or indemnification agreement.

*Plunkett Cooney* (by *Jeffrey C. Gerish, Charles W. Browning*, and *Shannon L. H. Phillips*) for Travelers Property Casualty Company of America.

*Clark Hill PLC* (by *Jay M. Berger* and *Matthew Heron*) for Peaker Services, Inc.

Before: BORRELLO, P.J., and SERVITTO and BECKERING, JJ.

BORRELLO, P.J. This appeal involves an insurance coverage dispute between plaintiff/counterdefendant, Travelers Property Casualty Company of America (plaintiff), and defendant/counterplaintiff, Peaker Services, Inc. (defendant). The trial court denied plaintiff's motion for summary disposition under MCR 2.116(C)(10) and granted summary disposition in favor of defendant under MCR 2.116(I)(2). The trial court held that plaintiff had a duty to defend and indemnify defendant in a separate breach-of-contract action pursuant to the commercial general liability (CGL) insurance policy that it issued to defendant. Plaintiff appeals as of right. For the reasons set forth in this opinion, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

Defendant is a corporation involved in the business of servicing commercial power-generation systems. Effective June 1, 2007, plaintiff issued a CGL policy to defendant wherein plaintiff agreed to provide liability coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

In 2006, the University of Michigan contacted defendant seeking a quote for services at its central power plant in Ann Arbor. The power plant utilizes steam turbines that generate electricity by directing steam across fan blades mounted to a generator. The university hired defendant to install an "electronic over-speed system" to replace its mechanical over-speed system. An over-speed system is used to prevent the turbines from spinning too fast and causing damage to the equipment.

On July 18, 2006, the university signed a purchase-order agreement for defendant to install a ProTech 203 Digital Fault Tolerant Over-Speed Trip System (Pro-Tech 203). The contract contained the following pertinent provisions:

4.0 Warranties and Representations of Supplier. Supplier acknowledges that the University is relying on these representations and warranties as essential elements to this Agreement, representing as they do, material inducements, without which the University would not have entered into this Agreement.

4.1 General Product Warranty. Supplier represents that all products and any support services provided under this Agreement (a) are new and unused . . . and free from defects in material and workmanship; (b) are of the quality, size, dimension and specifications ordered; (c) meets the highest performance and manufacturing specifications as described in documents or writings made available by the Supplier to the public or University . . . .

4.2 Qualifications. Supplier warrants that it, as well as its employees, agents and subcontractors engaged to provide the products or services under this Agreement . . . , has and will maintain all the skills, experience, and qualifications necessary to provide the services contemplated by this Agreement, including any required training, registration, certification or licensure.

\* \* \*

15.18 Supplier Damage to University Property. Without regard to any other section of the Agreement, Supplier shall be responsible for the costs to return to "as was" condition from any damage caused to the building, grounds, or other equipment and furnishings caused in whole or part by Supplier Personnel while performing activities arising under this Agreement. Supplier shall immediately report in writing the occurrence of any damage to the Building/Project Manager.

Defendant commenced work on the power plant in October 2007. Shortly after defendant completed the project, however, the power plant experienced problems. According to the university, defendant improperly calibrated the ProTech 203, causing one of the university's turbines to operate at twice the safe operational speed, resulting in significant damage to the generator equipment.

On March 17, 2011, the Regents of the University of Michigan and their captive insurer, Veritas Insurance Corporation (together referred to as "the Regents"), commenced a breach-of-contract action against defendant seeking in excess of $3 million in damages. The Regents alleged that defendant breached express warranties contained in the purchase-order agreement, breached the implied warranty of merchantability under the Uniform Commercial Code (UCC), MCL 440.1101 *et seq.*, and breached "the prevailing industry standards and practices . . . ."

Defendant filed a claim with plaintiff under the CGL policy asking plaintiff to defend and indemnify it in the Regents' suit. Plaintiff participated in the defense, but reserved the right to dispute coverage.

On June 14, 2012, plaintiff commenced this lawsuit seeking a declaratory judgment regarding its contractual obligations to defend and indemnify defendant under the CGL policy.[1] Defendant filed a counterclaim, seeking a declaratory judgment that plaintiff was obligated to defend and indemnify defendant under the policy.

Plaintiff moved for summary disposition under MCR 2.116(C)(10), arguing that it did not have a duty to

---

[1] Sometime thereafter, defendant reached a settlement agreement with the Regents.

defend and indemnify defendant, in part, because defendant's claim was excluded under the CGL policy's "contractual liability" exclusion. That exclusion provided, in relevant part, that the insurance contract did not cover bodily injury or property damage for which defendant was obligated to pay damages "by reason of the assumption of liability in a contract or agreement."

Plaintiff argued that defendant's claim fell within the contractual-liability exclusion because defendant was liable to the university by way of an assumption of liability. Specifically, plaintiff cited § 15.18 of the purchase-order agreement, wherein defendant agreed that, in the event the power plant was damaged, it would be "responsible for the costs to return [the property] to 'as was' condition . . . ." Plaintiff essentially argued that in this clause, defendant "assumed" its own liability and therefore was not covered for damages arising from breach of the contract.

Defendant responded, arguing the contractual-liability exclusion applied only to agreements wherein the insured assumed liability of a third party—i.e., indemnity or hold-harmless agreements. Defendant argued that it did not assume the liability of a third party, hence, there was no "assumption of liability" and plaintiff was obligated to provide coverage.

Following oral arguments, the trial court denied plaintiff's motion and granted summary disposition in favor of defendant pursuant to MCR 2.116(I)(2). The trial court did not clearly articulate the basis for its holding; rather, the court appeared to hold that the contractual-liability exclusion did not preclude coverage because "what we have -- there's potential tort liability and the fact that it's blocked by the statute of limitations I think is not decisive here. We look at the gravamen of the allegations, which are in fact negligence."

To obtain a final judgment and narrow the issues for appeal, plaintiff amended its complaint to, apart from the contractual-liability exclusion, "withdraw the other grounds for asserting a lack of coverage." The trial court entered a written order on February 14, 2013, granting judgment in favor of defendant and holding that defendant was entitled to coverage under the CGL policy. This appeal ensued.

## II. STANDARD OF REVIEW

At issue in this case is the interpretation and application of an insurance contract, which presents a question of law that we review de novo. *Cohen v Auto Club Ins Ass'n*, 463 Mich 525, 528; 620 NW2d 840 (2001). Similarly, we review de novo a trial court's ruling on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

## III. ANALYSIS

Plaintiff argues that the trial court erred by holding that the contractual-liability exclusion did not preclude coverage. Resolution of this issue requires that we construe the relevant portions of the insurance policy.

## A. PRINCIPLES OF INTERPRETATION

Similar to any other contract, "[a]n insurance policy must be enforced in accordance with its terms." *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 111; 595 NW2d 832 (1999). "Interpretation of an insurance policy ultimately requires a two-step inquiry: first, a determination of coverage according to the general insurance agreement and, second, a decision regarding whether an exclusion applies to negate coverage." *Auto-Owners Ins Co v Harrington*, 455 Mich 377, 382; 565

NW2d 839 (1997). "While [i]t is the insured's burden to establish that his claim falls within the terms of the policy, [t]he insurer should bear the burden of proving an absence of coverage." *Hunt v Drielick*, 496 Mich 366, 373; 852 NW2d 562 (2014) (quotation marks and citations omitted) (alteration in original). And, "[e]xclusionary clauses in insurance policies are strictly construed in favor of the insured." *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 567; 489 NW2d 431 (1992). "However, [i]t is impossible to hold an insurance company liable for a risk it did not assume, and, thus, [c]lear and specific exclusions must be enforced." *Hunt*, 496 Mich at 373 (quotation marks and citations omitted) (alteration in original).

### B. GENERAL INSURANCE AGREEMENT

CGL policies are generally written on standardized forms developed by the Insurance Services Office, Inc. (ISO).[2] *American Family Mut Ins Co v American Girl, Inc*, 268 Wis 2d 16, 33; 2014 Wis 2; 673 NW2d 65 (2004). The CGL policy provides coverage for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or *'property damage'* to which this insurance applies." (Emphasis added.) The policy defines "property damage" to include "[p]hysical injury to tangible property," or "[l]oss of use of tangible property," arising from an "occurrence" that occurs in the "coverage territory."

In this case, plaintiff does not argue that the university's property damage did not arise from an occurrence within the meaning of the CGL's general insurance agreement. Instead, plaintiff contends coverage was precluded

---

[2] ISO is a "national insurance policy drafting organization . . . ." *State Auto Prop & Cas Ins Co v Travelers Indemnity Co of America*, 343 F3d 249, 255 n 9 (CA 4, 2003).

by the policy's contractual-liability exclusion. Therefore, we proceed by determining whether the contractual-liability exclusion applied to negate coverage.

### C. CONTRACTUAL-LIABILITY EXCLUSION

The CGL policy provides a "broad statement of coverage, and insurers limit their exposure to risk through a series of specific exclusions." *American Family*, 268 Wis 2d at 34. The contractual-liability exclusion provides in pertinent part:

> **(2) Exclusions**
>
> This insurance does not apply to:
>
>            \*   \*   \*
>
> **b. Contractual Liability**
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages *by reason of the assumption of liability in a contract or agreement*. This exclusion does not apply to liability for damages:
>
> **(1)** That the insured would have in the absence of the contract or agreement; or
>
> **(2)** Assumed in a contract or agreement that is an "insured contract". . . . [Emphasis added.]

This clause contains two components: (1) a contractual-liability exclusion that excludes coverage for damages incurred "by reason of the assumption of liability in a contract or agreement," and (2) an exception to the exclusion that brings the insured's claim back into coverage when the insured would have incurred the liability irrespective of the contract or agreement, or the insured assumed liability in an "insured contract."[3] We proceed by

---

[3] The policy specifically defines "insured contract." Neither party contends that plaintiff's contract with the university was an insured contract.

first applying the contractual-liability exclusion before, if necessary, addressing the exceptions to the exclusion.

The critical language in the contractual-liability exclusion is the phrase, "assumption of liability," particularly, the term "assumption." Plaintiff argues that the term encompasses all contracts wherein the insured assumed any liability, including his or her own liability. Defendant, in contrast, argues that the term "assumption of liability" is generally understood to mean situations wherein an insured assumed the liability of a third party, such as an indemnity or hold-harmless agreement, and that assuming liability is wholly distinct from assuming a duty to perform a contract in a certain manner.

The CGL policy does not define the phrase "assumption of liability," and there is no published caselaw in Michigan defining the phrase in this context. Therefore, we turn to the dictionary. See *Pugh v Zefi*, 294 Mich App 393, 396; 812 NW2d 789 (2011) (stating that when a contract fails to define a term, "it is appropriate to consult a dictionary to determine the ordinary or commonly used meaning" of the term). *Black's Law Dictionary* (10th ed) defines "assumption" in relevant part as, "[t]he act of taking ([especially] *someone else's* debt or other obligation) for or on oneself . . . ." (Emphasis added.) "Liability," in turn, is defined as "[t]he quality, state, or condition of being legally obligated or accountable . . . ." *Id*.

Applying these definitions, when viewed in the context of a CGL policy as a whole—the purpose of which is to "protect[] business owners against liability to third-parties"[4]—the plain meaning of the phrase "assumption of liability" can reasonably be construed to

[4] 3, Thomas & Mootz, New Appleman on Insurance Law Library Edition (September 2013 update), § 16.02[3][a], p 16-28.

mean the act of taking on the legal obligations or responsibilities of another. Notably, in defining the term "assumption" to mean the act of "taking . . . for or on oneself," *Black's Law Dictionary* states, "[especially] *someone else's*" obligation. (Emphasis added.) "Especially" means "to an exceptional degree," "particularly," "preeminently," or "specifically." *Random House Webster's College Dictionary* (1997). Thus, the meaning of the term "assumption" predominantly refers to the act of taking on *"someone else's"* obligations. Indeed, a review of relevant legal treatises and caselaw from other jurisdictions supports that, in the context of a CGL policy, "assumption of liability" refers to the assumption of another's liability. See, e.g., *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 472; 663 NW2d 447 (2003) (indicating that it may be appropriate to consult legal treatises when interpreting an ambiguous contract); *Mettler Walloon, LLC, v Melrose Twp*, 281 Mich App 184, 221 n 6; 761 NW2d 293 (2008) (stating that while not binding, caselaw from sister states and federal courts may be considered persuasive authority).

" 'The key to understating [the contractual-liability exclusion] . . . is the concept of liability assumed.' " *American Family*, 268 Wis 2d at 47, quoting 2 Long, The Law of Liability Insurance (2002), § 10.05[2], pp 10-56, 10-57. Assumed liability differs from liability arising from an insured's breach of his or her own contract in that the former connotes the taking on of additional liabilities in excess of those imposed on the insured under general law. As the Wisconsin Supreme Court recently noted:

> Although, arguably, a person or entity assumes liability (that is, a duty of performance, the breach of which will give rise to liability) whenever one enters into a binding contract, in the CGL policy and other liability policies an 'assumed' liability is generally understood and interpreted

> by the courts to mean the liability of a third party, which
> liability one 'assumes' in the sense that one agrees to
> indemnify or hold the other person harmless. [*American
> Family*, 268 Wis 2d at 47-48 (quotation marks and citation
> omitted).]

Thus, the contractual-liability exclusion does not "bar
*all* contract liability," but rather "is limited to a special
type of contract—one in which the insured has assumed
the liability of another, i.e., a hold harmless or indem-
nification agreement." 3 Thomas & Mootz, New Apple-
man on Insurance Law Library Edition (September
2013 update), § 18.03[3][a], p 18-43 (emphasis added).

The rationale behind excluding the contractually
assumed liability of another from CGL coverage is that
" 'liability assumed by the insured under a contract or
agreement presents an uncertain risk' which cannot be
determined in advance for the purpose of fixing premi-
ums." *Gibbs M Smith, Inc v United States Fidelity
& Guaranty Co*, 949 P2d 337, 342 (Utah, 1997), quoting
1 Long, Law of Liability Insurance (1997), § 1.07[2],
p 1-42.1. Therefore,

> "[c]ontractual exclusion clauses which deny coverage for
> liability assumed by the insured under any contract or
> agreement not defined in the policy relieve the insurer
> from liability only in fact situations where the insured
> would not be liable to a third person except for the express
> assumption of such liability." [*Gibbs M Smith*, 949 P2d at
> 342, quoting 1 Long, § 1.07[2], p 1-44 (alteration in origi-
> nal) (emphasis omitted).]

In contrast, if the exclusion "excluded *all* liability associ-
ated with a contract made by the insured, commercial
liability insurance would be severely limited in its cover-
age." *Gibbs M Smith*, 949 P2d at 342 (emphasis added).

Consistently with how legal treatises have addressed
the issue, state and federal courts have held that the

contractual-liability exclusion applies to contracts involving assumption of the liability of a third party. For example, in *Olympic, Inc, v Providence Washington Ins Co of Alaska*, 648 P2d 1008, 1011 (Alas, 1982), in interpreting a contractual-liability exclusion similar to the one at issue in this case,[5] the Alaska Supreme Court distinguished between *"incurring* liability through breach of contract and specifically contracting to *assume* liability for another's negligence."* The court explained that " '[l]iability assumed by the insured under any contract' refers to liability incurred when one promises to indemnify or hold harmless another, *and does not refer to the liability that results from breach of contract." Id.* at 1011 (emphasis added).

More recently, in *American Family Mut Ins Co v American Girl, Inc*, 268 Wis 2d at 48, the Wisconsin Supreme Court held that the contractual-liability exclusion in a standard CGL policy "applies where the insured has contractually assumed the liability of a third party, as in an indemnification or hold harmless agreement[.]" In rejecting the contention that the exclusion precluded coverage for all incidents involving the insured's contractual liability, the court explained that "[t]he term 'assumption' must be interpreted to add something to the phrase 'assumption of liability in a contract or agreement.' " *Id.* Otherwise, "[r]eading the phrase to apply to *all* liabilities sounding in contract renders the term 'assumption' superfluous." *Id.* (emphasis added). Furthermore, the court reasoned, limiting the exclusion to instances involving the assumed liability of another

> is consistent with the general purposes of liability insurance because it enables insurers to enforce the fortuity

---

[5] The exclusion provided that the CGL policy did not apply to " 'liability assumed by the insured under any contract or agreement except an incidental contract . . . .' " *Olympic*, 648 P2d at 1010.

concept by excluding from coverage any policyholder agreements to become liable after the insurance is in force and liability is a certainty. . . . [Thus] further[ing] the goal of protecting the insurer from exposure to risks whose scope and nature it cannot control or even reasonably foresee. [*Id.*]

Consistently with *Olympic* and *American Family*, many other courts and legal authorities have concluded that the contractual-liability exclusion is limited to contracts wherein the insured assumes the liability of another. See, e.g., 46 CJS, Insurance, § 1413, pp 310-311 ("A provision in a liability insurance policy excluding coverage for liabilities assumed under any contract . . . does not apply to liabilities not within its terms. Such liability includes promises to indemnify or hold harmless another, but not liability resulting from a breach of contract.") (citations omitted).[6] We find these authorities persuasive and hold that "assumption of liability" in the context of a CGL policy's contractual-liability

---

[6] See also Anno: *Scope & Effect of Clause in Liability Policy Excluding From Coverage Liability Assumed by Insured Under Contract Not Defined in Policy*, 63 ALR2d 1122, §§ 1-3; *Indiana Ins Co v Kopetsky*, 11 NE3d 508 (Ind Ct App, 2014) ("Today we join those jurisdictions who have held that contractual liability exclusions in CGL policies bar coverage not for liability incurred by a contract breach but, rather, for liability assumed from a third party, which seems to be the majority position by a wide margin.") *Desert Mountain Props Ltd Partnership v Liberty Mut Fire Ins Co*, 225 Ariz 194, 205; 236 P3d 421 (Ariz Ct App, 2010) (holding that the exclusion "applies only to 'the assumption of another's liability' "); *Federated Mut Ins Co v Grapevine Excavation Inc*, 197 F3d 720, 726 (CA 5, 1999) (because the insured was not "being sued as the contractual indemnitor of a third party's conduct, but rather for its own conduct, the exclusion [was] inapplicable"); *Marlin v Wetzel Co Bd of Ed*, 212 W Va 215, 222; 569 SE2d 462 (2002) (" '[L]iability assumed by the insured under any contract' in an insurance policy . . . refers to liability incurred when an insured promises to indemnify or hold harmless another party . . . ."); *Gibbs M Smith*, 949 P2d at 340-342 (holding that "assumption of liability" refers to the assumption of a third-party's liability).

exclusion refers to those contracts or agreements wherein the insured assumes the liability of another. To conclude otherwise and construe "assumption" to encompass an insured's own liability for breach of contract renders the phrase "assumption of liability" surplusage. *American Family*, 268 Wis 2d at 48. This is because under general law an insured is inherently liable for damages arising from breach of its own contract. See, e.g., *Fultz v Union-Commerce Assoc*, 470 Mich 460, 465; 683 NW2d 587 (2004), quoting *Clark v Dalman*, 379 Mich 251, 260-261; 150 NW2d 755 (1967) (" '[A]ccompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and . . . a negligent performance constitutes a tort as well as a breach of contract.' "). And, in the event that the insured is a seller of goods, the insured has additional inherent liabilities under the UCC. Specifically, MCL 440.2314 provides that "a warranty that . . . goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind," and MCL 440.2315 provides an implied warranty of fitness that generally attaches to the sale of goods. Thus, in a contract, an insured need not assume liability for something that the law already imposes—i.e., liability for damages arising from breach of that contract.

Plaintiff contends that the jurisdictions holding that the contractual-liability exclusion concerns the assumption of a third-party's liability have applied a "term of art" approach to interpreting the contractual-liability exclusion in a manner that does not comport with Michigan's "plain meaning" approach to contract interpretation. Plaintiff contends that *Gilbert Texas Constr, LP v Underwriters at Lloyd's London*, 327 SW3d 118 (Tex, 2010), should govern our analysis. According to plaintiff, in that case, the Texas Supreme Court cor-

rectly applied a plain-meaning approach to contract interpretation and held that the exclusion barred breach-of-contract claims arising from contracts wherein the insured assumed its own liability. Plaintiff's reading of *Gilbert*, however, is overly broad.

In *Gilbert*, Gilbert Texas Construction, LP contracted with the Dallas Area Rapid Transit Authority (DART) to construct a light-rail system. *Id.* at 121-122. Gilbert, as DART's contractor, enjoyed governmental immunity, *id.* at 122 n 4; however, in the contract, Gilbert agreed to "pay for damage to third-party property resulting from either (1) a failure to comply with the requirements of the contract, or (2) a failure to exercise reasonable care in performing the work." *Ewing Constr Co, Inc v Amerisure Ins Co*, 420 SW3d 30, 35 (Tex, 2014) (emphasis omitted), citing *Gilbert*, 327 SW3d at 127. During construction, heavy rains damaged an adjacent property and the property owner, RT Realty (RTR), sued Gilbert alleging breach of contract and other claims. *Gilbert*, 327 SW3d at 122-123. Gilbert filed a claim for defense and indemnity under its CGL policy issued by Underwriters at Lloyds London (Underwriters). *Id.* Meanwhile, the trial court dismissed all of the claims against Gilbert except for the breach-of-contract claim. *Id.* at 123. Underwriters then denied coverage on grounds that the CGL policy's contractual-liability exclusion (identical to the one at issue in this case) precluded coverage. *Id.* Gilbert sued Underwriters, claiming that Underwriters had a duty to indemnify it under the CGL policy. *Id.*

The central issue on appeal was whether the exclusion for contractually assumed liability was limited in scope to contracts wherein the insured assumed the liability of a third party. The Texas Supreme Court held

that the exclusion was not limited to contracts involving the assumption of the liability of another, explaining:

> [H]ad it been intended to be so narrow as to apply only to an agreement in which the insured assumes liability of another party . . . it would have been simple to have said so. . . .

\* \* \*

> . . . [T]he exclusion does not say it is limited to the narrow set of contracts by which the insured assumes the liability of another person; the exclusion's language applies without qualification to liability assumed by contract except for two situations: (1) specified types of contracts referred to as 'insured contracts,' including indemnity agreements by which the insured assumes another's tort liability, and (2) situations in which the insured's liability for damages would exist absent the contract—in other words, situations in which the insured's liability for damages does not depend solely on obligations assumed in the contract. [*Id.* at 127-128 (emphasis omitted).]

At first blush, *Gilbert* appears to sweep with great breadth. Indeed, the court acknowledged precedent from other jurisdictions and expressly stated that it disagreed "by and large, with courts' and treatises' conclusions that the language of the contractual liability exclusion before us applies only to indemnity or hold-harmless agreements . . . ." *Id.* at 131. However, upon closer review, *Gilbert* is not as sweeping as it may appear. The *Gilbert* Court did not hold that the exclusion barred *all* claims involving the insured's contractual liability. See, e.g., *id.* at 128 ("We do not hold that the exclusion in Coverage A precludes liability for all breach of contract claims."). Instead, the court held that the exclusion barred claims arising under a contract wherein the insured assumed

*greater liability* than that which the insured would have incurred under general law. Specifically, the court explained as follows:

> Independent of its contractual obligations, Gilbert owed RTR the duty to comply with law and to conduct its operations with ordinary care so as not to damage RTR's property, and absent its immunity it could be liable for damages it caused by breaching its duty. In its contract with DART, however, Gilbert undertook a legal obligation to protect improvements and utilities on property adjacent to the construction site, *and to repair or pay for damage to any such property "resulting from a failure to comply with the requirements of this contract or failure to exercise reasonable care in performing the work."* (emphasis added). The latter obligation—to exercise reasonable care in performing its work—mirrors Gilbert's duty to RTR under general law principles. The obligation to repair or pay for damage to RTR's property "resulting from a failure to comply with the requirements of this contract" *extends beyond Gilbert's obligations under general law and incorporates contractual standards to which Gilbert obligated itself. [Id.* at 127 (emphasis altered).]

In a subsequent case, the Texas Supreme Court articulated *Gilbert*'s holding as follows:

> Gilbert did not contractually assume liability for damages within the meaning of the policy exclusion *unless the liability for damages it contractually assumed was greater than the liability it would have had under general law . . . . [Ewing,* 420 SW3d at 36 (emphasis added).]

In short, under *Gilbert* when an insured would be liable at general law for damages arising from its breach of contract, the contractually assumed liability does not preclude coverage, but when an insured takes on additional legal obligations and liabilities beyond those imposed at general law, coverage is barred by the contractual-liability exclusion.

Our reading of *Gilbert* aligns with *Ewing Constr Co, Inc v Amerisure Ins Co*, 420 SW3d 30, wherein the Texas Supreme Court clarified the scope of *Gilbert*. In that case, Ewing Construction Company, Inc., contracted with a school district to construct tennis courts. *Ewing*, 420 SW3d at 31. In the contract, Ewing agreed to perform the work in "a good and workmanlike manner . . . ." *Id.* at 36. Shortly after construction was complete, the tennis courts began flaking, crumbling, and cracking and were unusable for their intended purpose. *Id.* at 31. The school district sued Ewing, alleging breach of contract and negligence. *Id.* at 31-32. Ewing filed a claim with Amerisure Insurance Company, its CGL provider, seeking defense and indemnity. *Id.* at 32. Amerisure denied coverage, and Ewing filed a complaint for declaratory judgment. *Id.*

Citing *Gilbert*, Amerisure argued, in part, that coverage was precluded under the CGL policy's contractual-liability exclusion because Ewing had assumed liability for damages by contracting with the school district to perform work in a good and workmanlike manner. *Id.* at 32, 36. Ewing countered, arguing that "its express agreement to perform the construction in a good and workmanlike manner did not enlarge its obligations and was not an 'assumption of liability' within the meaning of the policy's contractual liability exclusion." *Id.* In agreeing with Ewing, the Texas Supreme Court clarified its holding in *Gilbert*, explaining, "we . . . determined in *Gilbert* that 'assumption of liability' means that the insured has assumed a liability for damages that exceeds the liability it would have under general law. . . . Otherwise, the words 'assumption of liability' are meaningless and are surplusage." *Id.* at 37, citing *American Family*, 268 Wis 2d at 48. The court held that Ewing did not assume liability for damages that exceeded the liability it had under general

law and, therefore, its claim was not precluded by the contractual-liability exclusion. *Ewing*, 420 SW3d at 37. Ewing had a "common law duty to perform its contract with skill and care" as that duty "accompanies every contract . . . ." *Id.* (quotation marks and citation omitted). The court concluded:

> [A] general contractor who agrees to perform its construction work in a good and workmanlike manner, without more, *does not enlarge its duty to exercise ordinary care in fulfilling its contract, thus it does not 'assume liability' for damages arising out of its defective work* so as to trigger the Contractual Liability Exclusion. [*Id.* at 38 (emphasis added).]

Contrary to plaintiff's argument, *Gilbert* does not support the proposition that defendant's claim for CGL coverage was barred by the contractual-liability exclusion. Rather, under the rationale articulated in *Gilbert* and *Ewing*, the exclusion does not apply in this case. By warranting that its goods and services were "free from defects in material and workmanship," and by agreeing to return the university's property to "as was" condition in the event that defendant damaged property during completion of the contract, defendant did not "enlarge its duty to exercise ordinary care in fulfilling its contract . . . ." *Ewing*, 420 SW3d at 38. General principles of law required that defendant's goods be fit and merchantable for their intended use so as not to cause damages to the university's property and for defendant to perform the contract with good and ordinary care. See *Fultz*, 470 Mich at 465 ("[A]ccompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done . . . .") (quotation marks and citation omitted). See also MCL 440.2314 and MCL 440.2315. In this case, like the general contractor in *Ewing*, by agreeing to return the university's property to "as was" condition, defendant

agreed to no more than what was imposed upon it under general law. Therefore, like in *Ewing*, defendant did not " 'assume liability' for damages arising out of its defective work so as to trigger the Contractual Liability Exclusion." *Ewing*, 420 SW3d at 38.

Plaintiff also contends that *Envision Builders, Inc, v Citizens Ins Co of America*, unpublished opinion per curiam of the Court of Appeals, issued July 24, 2012 (Docket Nos. 303652 and 303668), stands for the proposition that the contractual-liability exclusion applies to contracts wherein the insured assumes its own liability for breaching the contract.

In *Envision Builders*, the Macomb County Road Commission contracted with Envision Builders, Inc., to perform construction work, including the erection of roof trusses. *Id.* at 3. The contract provided that " '[a]ny trusses that are damaged during delivery or erection shall be replaced at no extra cost to the Owner.' " *Id.* at 4 (alteration in original). Envision hired a subcontractor to install the trusses. *Id.* at 3. During installation, the subcontractor failed to install temporary bracing, and before the roof work was complete, a wind storm caused the trusses to collapse, causing damage at the construction site. *Id.* Envision filed a claim for coverage under a standard CGL policy. *Id.* On appeal, this Court held that Envision was not entitled to coverage under the policy because the damages did not arise from an occurrence within the meaning of the policy. *Id.* at 3-4.

After concluding that there was no occurrence under the policy, this Court stated, "Even if there was coverage under the contract," the CGL policy's contractual-liability exclusion precluded coverage. *Id.* at 4. This Court reasoned that under Envision's contract with the road commission, Envision was obligated to replace any trusses that were damaged during completion of the

construction project. *Id.* This Court concluded, "Because Envision was obligated to pay damages for property damage by reason of its assumption of liability in its contract with the [road commission], the damage to the trusses is excluded from coverage." *Id.* This Court rejected the trial court's conclusion that the contractual-liability exclusion was limited to indemnity agreements, explaining:

> [U]nder [the contractual-liability exclusion,] indemnity agreements as well as the assumption of liability in a contract or agreement are excluded .... [T]he trial court failed to recognize that the contractual liability exclusion also applied to the assumption of liability in a contract like the one between Envision and the [road commission,] in which Envision assumed liability for damage to the trusses. [*Id.*]

We decline plaintiff's invitation to adopt the analysis set forth in *Envision Builders.* Initially, we note that *Envision Builders,* is an unpublished opinion and is not binding precedent under the rule of stare decisis. MCR 7.215(C)(1); *Dyball v Lennox,* 260 Mich App 698, 705 n 1; 680 NW2d 522 (2004). Moreover, we do not find *Envision Builders* persuasive. This Court's discussion of the contractual-liability exclusion in that case was limited and came after the Court concluded that the underlying event did not constitute an occurrence. Therefore, the analysis was not necessary to resolve the central issue in the case, and this Court did not need to engage in in-depth analysis of the contractual-liability exclusion. This Court did not provide any analysis of relevant legal authorities interpreting the exclusion and because it was not necessary to do so, this Court did not define the meaning of the words "assumption of liability" in the context of the CGL policy as a whole. Therefore, we do not find *Envision Builders* to be of value to our analysis in this case.

Finally, plaintiff contends that by failing to apply the contractual-liability exclusion, the trial court expanded the scope of the CGL policy to include contract claims when the policy was meant to be limited to potential tort liability. Plaintiff essentially argues that coverage under the policy turns on the form of the injured party's underlying complaint. This argument is not persuasive.

The CGL policy does not limit coverage for property damage arising from defendant's tort liability. Instead, in relevant part, the coverage applies to "property damage," caused by an "occurrence." Defective workmanship that damages a customer's property can constitute an occurrence, within the meaning of a CGL policy. See *Radenbaugh v Farm Bureau Gen Ins Co*, 240 Mich App 134, 145-148; 610 NW2d 272 (2000). Moreover, "the duty to defend and the duty to indemnify are not determined solely on the basis of the terminology used in a plaintiff's pleadings." *United States Fidelity & Guaranty Co v Citizens Ins Co of America*, 201 Mich App 491, 493; 506 NW2d 527 (1993). "Instead, a court must focus on the cause of the injury to ascertain whether coverage exists." *Id.* at 494. "It is the substance rather than the form of the allegations in the complaint which must be scrutinized." *Id.*

In this case, while the Regents brought a breach-of-contract action, the substance of the claim sounded in negligent performance of the purchase-order contract that could have given rise to either a tort or contract claim. The Regents alleged in part that defendant breached "the prevailing industry standards and practices . . . ." As our Supreme Court has previously explained, "accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and . . . *a negligent*

*performance constitutes a tort as well as a breach of contract." Fultz,* 470 Mich at 465 (quotation marks and citation omitted). Accordingly, merely because the Regents brought a breach-of-contract action as opposed to a tort action is not dispositive regarding whether coverage existed under the CGL policy. Rather, the policy's initial grant of coverage turned on whether the property damage arose from an occurrence, and plaintiff abandoned any argument regarding whether an occurrence caused the university's property damage in this case.[7]

### IV. CONCLUSION

In the context of a CGL policy, "assumption of liability" means assuming the legal obligations or responsibilities of another. In this case, defendant did not assume the legal obligations or responsibilities of another when it contracted with the university to provide goods and services of a particular quality and to return the university's property to "as was" condition in the event the university's property was damaged during completion of the contract. Therefore, the contractual-liability exclusion in the CGL policy did not preclude coverage in this case, and the trial court reached the correct result, albeit for different reasons. See *Gleason v Dep't of Transp,* 256 Mich App 1, 3; 662 NW2d 822 (2003) ("A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.").[8]

---

[7] In its brief on appeal, plaintiff states that after the trial court's ruling, it amended its complaint to "withdraw the other grounds for asserting a lack of coverage."

[8] Given our resolution of this issue, we need not address whether the exceptions to the contractual-liability exclusion applied or whether plaintiff was estopped from asserting the exclusion.

Affirmed. Defendant having prevailed, may tax costs. MCR 7.219(A). We do not retain jurisdiction.

SERVITTO and BECKERING, JJ., concurred with BORRELLO, P.J.