*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ATAIN INSURANCE COMPANY,

Plaintiff-Appellant,

v

GENERAL MACHINERY,

Defendant,

and

MICHIGAN INSURANCE COMPANY,

Defendant-Appellee.

UNPUBLISHED
May 28, 2019

No. 342011
Oakland Circuit Court
LC No. 2017-158483-CK

Before: SAWYER, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order denying its motion for summary disposition and granting summary disposition in favor of defendant, Michigan Insurance Company (MIC), pursuant to MCR 2.116(I)(2), in this declaratory action to resolve an insurance coverage dispute. We reverse and remand for entry of an order of summary disposition in favor of plaintiff.

This action arises from a warehouse fire at premises owned by T & W Tool & Die Corporation (T & W). Defendant General Machinery (GM) was hired to dismantle and remove machinery from T & W's premises and prepare it for auction by Surplus Asset Auctions, LLC (SAA). GM began its work at the premises in March of 2015 and continued until June of 2015. T & W's owner retained access to the building, but GM was given keys and the alarm code to the building to provide its work crew with free access to the warehouse to do its work. The warehouse area consisted of approximately 90% of the building. GM did not have access to the remaining area, which consisted of offices. GM brought large cranes and forklifts to the premises to dismantle and transport different machines, and it stored this equipment at the premises overnight. GM's workers also left their tools at the premises overnight. On June 8,

-1-

2015, GM's workers were using torches to cut steel on machines and ignited a fire that damaged the building.

Michigan Insurance Company (MIC), as the insurer for T & W, paid T & W's claim for damages and then brought suit against GM, alleging that it was entitled to be subrogated for the damages it paid under its policy with T & W for the fire caused by GM's negligence. GM notified its insurer, plaintiff Atain Insurance Company. As relevant to this appeal, plaintiff's policy with GM contained a provision limiting coverage to $100,000 for " 'property damage' to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire." Plaintiff tendered $100,000 pursuant to this limit, but its offer was not accepted. Consequently, plaintiff filed the instant action against GM and MIC to obtain a ruling that its coverage was limited to $100,000 because GM was temporarily occupying T & W's property when GM caused the fire, and that it was entitled to tender the $100,000 coverage limit in full satisfaction of its obligations under the policy with GM.

Plaintiff filed a motion for summary disposition against MIC,[1] arguing that there was no genuine issue of material fact that GM was temporarily occupying T & W's property at the time of the fire, thereby triggering the $100,000 policy limit. The trial court found that GM was performing work on the property, but T & W's owner remained on the property and GM did not have unfettered access or complete control of the property, and thus, GM did not occupy the property. Therefore, the court concluded that the $100,000 policy limit did not apply. Accordingly, it denied plaintiff's motion and instead granted summary disposition in favor of MIC pursuant to MCR 2.116(I)(2).

Plaintiff argues on appeal that the trial court erred by finding that GM did not temporarily occupy T & W's premises within the meaning of the $100,000 policy limitation. We agree.

We review de novo a trial court's decision on a motion for summary disposition. *Meemic Ins Co v Fortson*, 324 Mich App 467, 473; 922 NW2d 154 (2018), lv pending. Although plaintiff moved for summary disposition under MCR 2.116(C)(8) and (C)(10), both parties submitted evidence outside the pleadings in support of their arguments. Therefore, the motion is properly reviewed under MCR 2.116(C)(10). *Osman v Summer Green Lawn Care*, 209 Mich App 703, 705; 532 NW2d 186 (1995), overruled in part on other grounds in *Smith v Globe Life Ins Co*, 460 Mich 446, 455 n 2; 597 NW2d 28 (1999). As explained in *Lockwood v Twp of Ellington*, 323 Mich App 392, 400-401; 917 NW2d 413 (2018):

> A motion for summary disposition brought under MCR 2.116(C)(10) tests the factual sufficiency of the complaint, and should be granted where there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law.

> The moving party has the initial burden to support its claim for summary disposition by affidavits, depositions, admissions, or other documentary evidence.

---

[1] A default was entered against GM.

The court must consider all of the admissible evidence in a light most favorable to the nonmoving party. However, the party opposing summary disposition under MCR 2.116(C)(10) may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ.

If, after careful review of the evidence, it appears to the trial court that there is no genuine issue of material fact and the opposing party is entitled to judgment as a matter of law, then summary disposition is properly granted under MCR 2.116(I)(2). [Citations and quotations omitted.]

The interpretation of an insurance contract presents a question of law that is reviewed de novo. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999). Insurance policies are subject to the same principles of contract construction that govern any other type of contract. *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005). To interpret a contract, the examining court must ascertain the intent of the parties by evaluating the language of the contract in accordance with its plain and ordinary meaning. *In Re Egbert R Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). Language of a contract that is clear and unambiguous must be enforced as written. *Id*. A contract is unambiguous where, even if inartfully worded or clumsily arranged, it fairly admits only one interpretation. *Holmes v Holmes*, 281 Mich App 575, 594; 760 NW2d 300 (2008). Every word, phrase, and clause in a contract must be given effect, and an interpretation that would render any part of the contract surplusage or nugatory must be avoided. *Farm Bureau Gen Ins Co v Blue Cross Blue Shield*, 314 Mich App 12, 20-21; 884 NW2d 853 (2016).

The insured has the burden of establishing that his claim falls within the terms of the policy while the insurer is responsible for proving an absence of coverage. *Travelers Prop Cas Co of America v Peaker Servs, Inc*, 306 Mich App 178, 185; 855 NW2d 523 (2014). An exclusionary clause in an insurance policy is strictly construed in favor of the insured, however, an insurance company cannot be held liable for a risk it did not expressly assume. *Id*. Therefore, a clear and specific exclusion must be enforced. *Id*. When a term is not defined in an insurance policy, it may be given its commonly understood meaning by referring to its dictionary definition. *Brown v Farm Bureau Gen Ins Co of Mich*, 273 Mich App 658, 662; 730 NW2d 518 (2007).

Plaintiff's policy with GM provides that plaintiff could tender the applicable limit of insurance and be relieved of its duty to defend:

X. TENDERING OF APPLICABLE LIMIT OF INSURANCE

The COMMERCIAL GENERAL LIABILITY COVERAGE FORM CG 0001 is amended as follows:

SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY and COVERAGE B PERSONAL AND

-3-

ADVERTISING INJURY LIABILITY, Insuring Agreement, 1, a. (2) is deleted in its entirety and replaced with the following:

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or when we tender the applicable limit of insurance to any person or organization that has a financial interest in a claim or "suit" under Coverages A or B or medical expenses under Coverage C.

Plaintiff's policy with GM also contains the following provision limiting coverage for property damage of premises temporarily occupied by an insured and arising out of a fire:

SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

* * *

6. Subject to 5. above, the Fire Damage Limits is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

The Supplemental Declarations page of the policy provides that the Fire Damage coverage limit was $100,000.

At issue is the meaning of the phrase "temporarily occupied" in the policy. Although section V of the policy contains a definition section, it does not define "temporarily occupied." Accordingly, the dictionary definition of the term "occupy" must be examined to determine the ordinary meaning of the term. *Brown*, 273 Mich App at 662. The *Random House Webster's College Dictionary* (2001), p 917, defines occupy as follows:

**1.** to have, hold or take as a separate space; possess, reside in or on, or claim: *The orchard occupies half the farm*. **2.** to be a resident or tenant of; dwell in. **3.** to fill up, employ, or engage: *to occupy time reading*. **4.** to engage or employ the mind, energy, or attention of: *We occupied the children with a game*. **5.** to take possession and control of (a place) as by military invasion. **6.** to hold (a position, office, etc.). **7.** To take or hold possession. [Emphasis in original.]

Applying the definition of "occupy" to the facts of this case, we conclude that GM occupied T & W's warehouse. GM's crew took possession of the warehouse as a separate space from the office. The crew was given the key to the building as well as the access code to enter and exit the premises between 6:30 a.m. and 5:30 p.m. on weekdays and for limited hours on Saturdays. GM's employees brought in large-scale equipment, such as cranes and forklifts, and other tools that fit into a desk-sized toolbox, and left the equipment and tools at the job site during the process of dismantling and preparing the machinery for auction. The work began in March of 2015 and continued through June of 2015. Although GM continued to maintain a

-4-

separate office, the crew assigned the task of removing equipment from T & W's premises proceeded to the T & W facility to perform their work, they ate lunch at the premises, and they used the bathroom there.

MIC contends that GM did not occupy the premises because it maintained its own building in Detroit, did not lease T & W's premises, and its crew of five men simply could not occupy 57,000 square feet when they were present to dismantle machinery in specific locations of the warehouse. However, the definition of "occupy" includes "to have, hold, or take as a separate space" or "to take hold or hold possession." It does not require that occupancy or control be exclusive to all others, including T & W's owner, or to the exclusion of all other properties, including GM's Detroit property. Although GM's principal testified that T & W's owner would ask GM's crew to focus on a particular area or machine, and a crew of five men could not physically fill the approximate 57,000 square feet of warehouse space at once, the machinery was present throughout the facility, and the crew had free rein over the 57,000 square feet throughout the warehouse to prepare for the auction. The fact that GM was provided with the keys and alarm code for the building indicates that it had open access to the warehouse premises. Moreover, for purposes of the $100,000 coverage limit, the term "occupied" is modified by "temporarily," which is defined as "1. lasting or effective for a time only; not permanent." *Random House Webster's College Dictionary* (2001). The phrase "temporarily occupied" is indicative of the factual scenario at hand; that is, that employees may be hired at or assigned to a particular location, but sent to work at a different site to work on a particular project. The federal cases relied upon by MIC to argue otherwise are not binding upon this Court, are factually distinguishable, and do not lead to a different conclusion.

In sum, we hold that there is no genuine issue of material fact that GM temporarily occupied T & W's warehouse when it established a presence at the site for a three-month period, during which it was provided with keys and the alarm code to the building, stored equipment and tools at the site, and was given free access to the 57,000-square-foot warehouse for the purpose of preparing large machinery for auction and removal.

MIC argues that if this Court determines that GM temporarily occupied the premises, remand is required because there is a question of fact regarding which portions it occupied, and the $100,000 coverage limit would not apply to property damage to any areas that were not occupied. Initially, we reject MIC's suggestion that it did not occupy portions of the warehouse where workers were not physically present at the time of the fire. As explained previously, GM had free access to the entire 57,000-square-foot portion of the warehouse, regardless of where workers were physically situated at any given time. Further, a party opposing a motion for summary disposition pursuant to MCR 2.116(C)(10) must set forth specific facts to demonstrate that a genuine factual issue exists. *Lockwood*, 323 Mich App at 400-401. Although MIC argues

that GM did not have access to the offices in the building, MIC never submitted evidence to delineate where damage occurred within occupied versus unoccupied areas. Accordingly, MIC failed to establish that a genuine issue of material fact existed to avoid summary disposition.

Reversed and remand for entry of an order of summary disposition in favor of plaintiff. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto