# STATE OF MICHIGAN

# COURT OF APPEALS

NATHAN MURPHY-DUBAY,

      Plaintiff-Appellant,

v

DEPARTMENT OF LICENSING AND
REGULATORY AFFAIRS and DIRECTOR,
DEPARTMENT OF LICENSING AND
REGULATORY AFFAIRS,

      Defendants-Appellees.

FOR PUBLICATION
August 18, 2015
9:00 a.m.

No. 321380
Court of Claims
LC No. 14-000019-MZ

---

NATHAN MURPHY-DUBAY,

      Plaintiff-Appellant,

v

DEPARTMENT OF LICENSING AND
REGULATORY AFFAIRS,

      Defendant-Appellee.

No. 321749
Ingham Circuit Court
LC No. 13-001164AA

---

Before: SAWYER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

In Docket No. 321380, plaintiff appeals as of right from an opinion and order of the Court of Claims granting defendants' motion for summary disposition on plaintiff's complaint for a writ of mandamus and declaratory judgment; plaintiff sought to compel the Department of Licensing and Regulatory Affairs to take action on his purported application for a limited license to practice medicine. In Docket No. 321749, plaintiff appeals as of right from a final order of the circuit court affirming the decision of the Department of Licensing and Regulatory Affairs, Bureau of Health Care Services, Professional Licensing Section, which rejected the application. We affirm.

-1-

I. FACTS

Plaintiff attended Saba University School of Medicine, located on the island of Saba in the Netherland Antilles. He completed two years of coursework, followed by two years of clinical rotations through Dalhousie University in Nova Scotia, Canada. After his clinical rotations, plaintiff returned to Michigan and began seeking entrance into postgraduate clinical training programs (commonly known as "residencies"), but was unable to secure a position.[1]

On June 18, 2013, plaintiff submitted an application on a form he created himself, seeking a "limited license" to practice medicine within the State of Michigan pursuant to MCL 333.16182(1). On July 29, 2013, plaintiff sent defendants a follow-up letter, asking for a favorable response, or, in the event of a denial, for an opportunity to be heard pursuant to MCL 333.16232. On September 23, 2013, plaintiff filed a complaint for a writ of mandamus and declaratory judgment in the Ingham Circuit Court seeking an order directing defendants to take action on his June 18, 2013 application and entry of a judgment declaring the rights of the parties regarding medical licensure under applicable constitutional, statutory, and administrative law.

On September 30, 2013, the manager of the Bureau of Health Care Services, Professional Licensing Section, sent plaintiff a letter explaining that the board of medicine does not issue limited licenses to individuals upon request and that limited licenses are "typically issued for a group of licensees who either have restrictions to the location in which they may physically practice such as with an educational limited license or for disciplinary purposes for someone who has previously held a full license." In addition, the manager explained that MCL 333.16232 does not authorize a hearing for someone whose education or training does not meet the requirements for licensure as a physician, but applies to initial licensure applicants who meet the educational and training requirements, but are denied licensure for reasons related to past criminal convictions, previous disciplinary actions, or other issues that may impact or relate to their overall good moral character and ability to practice safely and legally in the State of Michigan, giving those individuals the opportunity for a hearing to demonstrate that, despite their history, they currently possess good moral character and can practice their profession safely. On October 18, 2013, plaintiff filed an appeal in the Ingham Circuit Court seeking judicial review of defendants' September 30, 2013 letter rejecting his application for a limited license and request for a hearing.[2]

On October 28, 2013, defendants filed a motion for summary disposition of plaintiff's complaint for a writ of mandamus and declaratory judgment pursuant to MCR 2.116(C)(8) and

---

[1] Plaintiff has also taken and passed "Step 3" of the United States Medical Licensing Examination (USMLE), which is typically taken after one has completed a residency.

[2] Although plaintiff characterizes the agency's action as "denying" him a license, the agency's action is more accurately characterized as rejecting his application (again, the application form was created by plaintiff himself because the agency had not and does not recognize the type of license plaintiff believed he was entitled to under MCL 333.16182(1)). The agency refunded the application fee plaintiff included with his application.

(C)(10). On November 1, 2013, plaintiff filed a response. On January 23, 2014, due to statutory changes, plaintiff's writ of mandamus and request for declaratory judgment claims were transferred to the Court of Claims pursuant to MCL 600.6404(3), while the appeal of the agency decision remained in circuit court.

On April 1, 2014, the Court of Claims issued an opinion and order granting defendants' motion for summary disposition on plaintiff's complaint for a writ of mandamus and declaratory judgment pursuant to MCR 2.116(C)(8). On April 28, 2014, the Ingham Circuit Court issued a final order affirming the September 30, 2013 agency decision.

## II. INTERPRETATION OF MCL 333.16182

Plaintiff first asserts that defendants misinterpreted and misapplied the Public Health Code, 1978 PA 368, as amended, MCL 333.1101 *et seq.*, when they failed to issue him a "limited license" to practice medicine, which he contended was permitted by MCL 333.16182(1). We disagree.[3]

MCL 333.16182 states as follows:

(1) A board may grant a limited license to an individual if the board determines that the limitation is consistent with the ability of the individual to practice the health profession in a safe and competent manner, is necessary to protect the health and safety of patients or clients, or is appropriate to promote the efficient and effective delivery of health care services.

(2) In addition to the licenses issued under subsection (1), a board may grant the following types of limited licenses upon application by an individual or upon its own determination:

(a) Educational, to an individual engaged in postgraduate education.

(b) Nonclinical, to an individual who functions only in a nonclinical academic, research, or administrative setting and who does not hold himself or herself out to the public as being actively engaged in the practice of the health profession, or otherwise directly solicit patients or clients.

(c) Clinical academic, to an individual who practices the health profession only as part of an academic institution and only in connection with his or her employment or other contractual relationship with that academic institution. For an individual applying for a limited license under this subdivision to engage in the

---

[3] This issue of statutory interpretation presents a question of law reviewed de novo. *Huron Behavioral Health v Dep't of Community Health*, 293 Mich App 491, 497; 813 NW2d 763 (2011).

-3-

practice of medicine under part 170, "academic institution" means that term as defined in section 17001.

Specifically, plaintiff asserts that part 1 of subsection (1), which authorizes a limited license when "consistent with the ability of the individual to practice the health profession in a competent manner," is applicable here, and "[i]t is this provision that authorizes the Agency to issue Appellant a limited license which it refuses to do."

Subsection (1) permits a limited license to be issued if any of its three criteria are met, including the "consistent with the ability" condition upon which plaintiff relies. However, the Legislature via the Public Health Code invested in the various medical boards broad discretion with respect to the licensing of applicants to practice medicine. It did not, as plaintiff asserts, unambiguously provide in subsection (1) that a board grant a limited license to practice medicine to someone in plaintiff's particular situation.

For example, MCL 333.16174(1) permits a board to enact rules that promote safe and competent practice and informed consumer choice:

> An individual who is licensed or registered under this article shall meet all of the following requirements:
>
> * * *
>
> (c) Have a specific education or experience in the health profession or in a health profession subfield or health profession specialty field of the health profession, or training equivalent, or both, as prescribed by this article or rules of a board necessary to promote safe and competent practice and informed consumer choice.

MCL 333.16141(3) makes it clear that it is the boards that set the standards: "The department may promulgate rules to promote the effective and consistent administration of this article. However, the department shall not promulgate rules that constitute the licensure, registration, or examination of health professionals." Likewise, MCL 333.16148(1) provides that "a board may promulgate rules to establish standards for the education and training of individuals to be licensed or registered, or whose licenses or registrations are to be renewed, for the purposes of determining whether graduates of a training program have the knowledge and skills requisite for practice of a health profession or use of a title." MCL 333.16146(2)(b) permits a board to "[r]eclassify licenses on the basis of a determination that the addition or removal of conditions or restrictions is appropriate." And, MCL 333.16145(3) states that "[o]nly a board or task force shall promulgate rules to specify requirements for licenses, registrations, renewals, examinations, and required passing scores."

In MCL 333.16175, the Legislature directed that a board or its task forces "consider" various factors in developing the standards:

> In developing minimum standards of educational prerequisites for licensure or registration, a board and its task forces shall consider equivalency and proficiency testing and other mechanisms, and where appropriate grant credit for

past training, education, or experience in health and related fields. Standards may include those for formal education, practice proficiency, and other training, education, or experience which may provide equivalence to completion of formal educational requirements.

This statute does not restrict a board in its decisions that follow the above considerations. Rather, it reflects a grant of power and discretion.

Finally, it is evident from viewing the entire regulatory scheme (rather than only looking at MCL 333.16182 in isolation), that subsection (1) was provided so that a board or task force may, in its discretion, issue limited licenses in disciplinary proceedings. See *Nolan v Mich Dep't of Licensing & Regulation*, 151 Mich App 641, 653; 391 NW2d 424 (1986); MCL 333.16108 (defining "reinstatement" as "the granting of a license or certificate of registration, with or without limitations or conditions, to an individual whose license or certificate of registration has been suspended or revoked," and "reclassification" as "an action by a disciplinary subcommittee by which restrictions or conditions, or both, applicable to a license are added or removed."); MCL 333.16106 (defining "limitation" as "an action by which a board imposes restrictions or conditions, or both, on a license," and "limited license" as "a license to which restrictions or conditions, or both, as to scope of practice, place of practice, supervision of practice, duration of licensed status, or type or condition of patient or client served are imposed by a board."); MCL 333.16226 (instructing disciplinary subcommittees to order a limited license as a sanction for certain violations); MCL 333.16245("an individual whose license is limited, suspended, or revoked under this part may apply to his or her board or task force for a reinstatement of a revoked or suspended license or reclassification of a limited license pursuant to section 16247 or 16249."); MCL 333.16247(1)("A board or task force may reinstate a license or issue a limited license to an individual whose license has been suspended or revoked under this part if after a hearing the board or task force is satisfied by clear and convincing evidence that the applicant is of good moral character, is able to practice the profession with reasonable skill and safety to patients, has met the criteria in the rules promulgated under section 16245(6), and should be permitted in the public interest to practice."); MCL 333.16249("A disciplinary subcommittee may reclassify a license limited under this part to alter or remove the limitations if, after a hearing, it is satisfied that the applicant will practice the profession safely and competently within the area of practice and under conditions stipulated by the disciplinary subcommittee, and should be permitted in the public interest to so practice.").

Plaintiff's argument that defendants misinterpreted and misapplied the relevant portions of the Public Health Code fails. Plaintiff's argument that the availability of medical care would be enhanced by issuance of the type of limited license he seeks should be directed to the Legislature and/or the appropriate agencies for consideration as a matter of policy.

### III. CONSTITUTIONAL ARGUMENTS

Plaintiff next argues that if the licensing rules at issue do not authorize at least a limited medical license for individuals who have demonstrated competence through the testing process, i.e., passing "Step 3" of the USMLE, those rules should be declared an unconstitutional exercise

of the state's authority to regulate the professions because they violate his due process and equal protection guarantees. We disagree.[4]

"That the State through the legislature may provide for the licensure and regulation of professions, like the healing arts in which the public interest is very great, is not open to question." *Fowler v Bd of Registration in Chiropody*, 374 Mich 254, 256; 132 NW2d 82 (1965). This is because the right to engage in business is subject to the state's police powers to enact laws in furtherance of the public health, safety, welfare, and morals. *Grocers Dairy Co. v. Dep't of Agriculture Director*, 377 Mich 71, 75, 138 NW2d 767 (1966). Accordingly, when legislation is challenged on due process and equal protection grounds because of its interference with economic or business activity, the challenger must establish either that no legitimate public purpose is served by the legislation or that there is no rational relationship between the provisions and a legitimate public purpose. *Stanfield v Dep't of Licensing & Regulation*, 128 Mich App 207, 211-212; 339 NW2d 876 (1983). Thus, there is a two-step inquiry: (1) whether there is a legitimate public purpose, and if so, (2) whether there a rational relationship between the legislation and the public purpose sought to be achieved.

In this case, there is a legitimate public purpose served by the legislation: to protect the public by ensuring that medicine is practiced in a safe and competent manner. The real dispute is over whether there is a rational relationship between the postgraduate residency requirement and this legitimate public purpose.

We conclude that the Public Health Code's requirement that a period of postgraduate education must be completed before a license may be issued is rationally related to ensuring that medicine is practiced in a safe and competent manner. The requirement that a residency must be completed before a person can be licensed to practice medicine is rationally related to this public purpose because it ensures that those who practice medicine possess a certain amount of medical education and training and that they have adequately demonstrated their fitness and capacity to practice medicine in a safe and competent manner by completing a residency. Although plaintiff may be correct that there is a physician shortage and extensive areas of the state are medically underserved, that fact is of little relevance. The legitimate public purpose that must be rationally related to the residency requirement is ensuring the safe and competent practice of medicine, not reducing physician shortage and eliminating medical underservice. The residency requirement helps ensure that all licensed physicians attain proficiency in the practice of medicine. Although eliminating this requirement may reduce physician shortage and medical underservice, it would also frustrate the board of medicine's ability to ensure that all licensed physicians have attained the requisite proficiency. Accordingly, because the Public Health Code's requirement that a period of postgraduate education must be completed before a license may be issued is rationally related to a legitimate public purpose, it neither violates due process nor constitutes a denial of equal protection and plaintiff's constitutional claims fail.

---

[4] This Court reviews constitutional questions de novo. *In re Ayers*, 239 Mich App 8, 10; 608 NW2d 132 (1999).

## IV. ACTS IN EXCESS OF STATUTORY AUTHORITY AND UNLAWFUL SUBDELEGATION

Plaintiff next argues that the board of medicine exceeded its authority under MCL 333.17031(1) and that the Public Health Code's regulatory scheme results in the improper subdelegation of the licensing decision. We disagree.[5]

MCL 333.17031(1) states: "An applicant for a license must complete the requirements for the degree in medicine *and must complete a period of postgraduate education to attain proficiency in the practice of the profession*, as prescribed by the board in rules . . . ." (Emphasis added). Pursuant to this statute, the board of medicine adopted a rule requiring applicants to satisfactorily complete two years of postgraduate clinical training in a program approved by the board in a board-approved hospital or institution. Mich Admin Code, R 338.2316(4); R 338.2317(4). Regarding approved programs and facilities, the board adopted the following standards:

> (2) The board approves and adopts by reference the standards for accrediting hospitals which were adopted in April, 1986, by the joint commission on accreditation of hospitals and which were effective January 1, 1987. The board shall consider any hospital or institution that is accredited by the joint commission on accreditation of hospitals as a hospital or institution approved by the board.
>
> (3) The board approves and adopts by reference the standards for approving postgraduate clinical training programs which were adopted in 1987 by the accreditation council for graduate medical education and which were effective July 1, 1987, entitled "The Essentials of Accredited Residencies in Graduate Medical Education," and the board shall designate any program of postgraduate clinical training approved by the accreditation council for graduate medical education as a program approved by the board. [Mich Admin Code, R 338.2313.]

Plaintiff asserts that, in adopting the above rules, the board of medicine exceeded its statutory authority because the goal of MCL 333.17031(1) is "proficiency," and the Accreditation Council for Graduate Medical Education (ACGME) has declared its purpose to be the preparation of physicians for practice in a medical specialty. Per plaintiff, while "specialization" in the medical profession may be viewed as a worthy goal, it is not an objective expressed in the Public Health Code. Thus, according to plaintiff, by adopting ACGME standards, the board enlarged its authority by requiring something that the Public Health Code does not.

---

[5] Whether a decision by an agency is in excess of the statutory authority or jurisdiction of the agency is an issue of statutory interpretation, which presents a question of law reviewed de novo. *Huron Behavioral Health*, 293 Mich App at 497.

As discussed above, the flaw in plaintiff's argument is that the Legislature, via the Public Health Code, invested in the board of medicine broad discretion with respect to the licensing requirements of applicants to practice medicine. Indeed, that the board has discretion to determine what satisfies the requirement of completing a period of postgraduate education to attain proficiency in the practice of the profession is evident in the text of MCL 333.17031(1) itself: An applicant for a license must complete the requirements for the degree in medicine and must complete a period of postgraduate education to attain proficiency in the practice of the profession, "*as prescribed by the board in rules . . . .*" (Emphasis added). Although plaintiff characterizes it as "exceeding statutory authority," the real question is whether the board's adoption of these standards conflicts with the Legislature's intent as expressed in the language of the statute. Again, given that the Public Health Code invests broad discretion in the board, and MCL 333.17031(1) unambiguously instructs the board to exercise that discretion in setting the postgraduate education standards, we conclude that the board's adoption of the above standards does not conflict with the Legislature's intent as expressed in the language of the statute. Accordingly, plaintiff's argument is without merit.

Plaintiff also asserts that the regulatory scheme at issue, which requires admission to a postgraduate program to obtain a license, effectively enables the admissions committees of the programs to deny a license to practice medicine, and is thus an improper subdelegation of the licensing decision. "It is well settled that an administrative agency may not subdelegate the exercise of discretionary acts unless the Legislature expressly grants it authority to do so." *Edmond v Dep't of Correction*, 143 Mich App 527, 536; 373 NW2d 168 (1985).

Although it is true that the admissions committees of the programs determine the individuals who are admitted to the programs, which undoubtedly affects the likelihood of the ultimate goal of full licensure, such a decision is one of many indirect influences on the person's ability to achieve the goal of licensure. Indeed, the same argument could be made concerning the admissions committees of medical schools. We find no impermissible subdelegation of authority.

## V. ANTITRUST ARGUMENTS

Plaintiff next argues that the postgraduate clinical training rule violates antitrust law. We disagree.[6]

Michigan's Antitrust Reform Act, MCL 445.771 *et seq.*, makes it unlawful to engage in anticompetitive conduct in the marketplace:

> The establishment, maintenance, or use of a monopoly, or any attempt to establish a monopoly, of trade or commerce in a relevant market by any person,

---

[6] Whether the rule requiring the completion of two years of postgraduate clinical training in a program approved by the ACGME violates antitrust law presents a question of law reviewed de novo. *Huron Behavioral Health*, 293 Mich App at 497.

for the purpose of excluding or limiting competition or controlling, fixing, or maintaining prices, is unlawful. [MCL 445.773.]

The act contains an exemption for state agencies and boards:

> This act shall not apply to a transaction or conduct specifically authorized under the laws of this state or the United States, or specifically authorized under laws, rules, regulations, or orders administered, promulgated, or issued by a regulatory agency, board, or officer acting under statutory authority of this state or the United States.[MCL 445.774(4).]

Plaintiff's argument fails because the challenged anticompetitive conduct he complains of (requiring the completion of two years of postgraduate clinical training in a program approved by the ACGME before a license may be issued), is undertaken pursuant to a regulatory scheme that, as discussed above, is authorized by the Public Health Code. Thus, the exemption in MCL 445.774(4) applies.

Regarding federal antitrust law, plaintiff did not raise this issue in his complaint nor argue it before the trial court, and we could very well deem it waived. See *Admire v Auto-Owners Ins Co*, 494 Mich 10, 17 n 5; 831 NW2d 849 (2013) (noting that Michigan generally follows the "raise or waive" rule of appellate review).[7] In any event, the policy complained of (again, requiring the completion of two years of postgraduate clinical training in a program approved by the ACGME before a license may be issued) is equally exempt from federal antitrust laws under the "state action" doctrine, because it is clearly articulated and affirmatively expressed as state policy, and the policy is actively supervised by the State. *North Carolina State Bd of Dental Examiners v FTC*, ___ US ___; 135 S Ct 1101, 1110; ___ L Ed 2d ___ (2015).

## VI. REGULATORY TAKING

Plaintiff next argues that denying him a license is a regulatory "taking" of private property in violation of state and federal law. We disagree.[8]

"The constitutions of both the United States and the State of Michigan provide that private property shall not be taken without due process or just compensation." *In re Certified Question*, 447 Mich 765, 787; 527 NW2d 468 (1994). "One who asserts an uncompensated taking claim must first establish that a vested property right is affected." *Id.* at 788. "Without a property right, a plaintiff has no basis for challenging a statute on the ground that it constitutes a confiscatory taking without due process of law." *Id.* A vested property right is an interest that is

---

[7] Plaintiff asserts that he raised the federal antitrust issue in paragraph 48G of his complaint. He did not. All he did was cite a case from this Court and indicate in a parenthetical that this Court was citing the United States Supreme Court. The paragraph repeatedly refers to "Michigan law" and "Michigan's antitrust act," and never cites to or mentions any specific federal law.

[8] This Court reviews constitutional questions de novo. *In re Ayers,* 239 Mich App at 10.

more than a mere expectation. *Id.* Rather, it requires a "legitimate claim of entitlement." *Berkowitz v Dep't of Licensing & Regulation*, 127 Mich App 556, 563, 339 NW2d 484 (1983).

In this case, although plaintiff may have had an expectation that his education, examination results, and experience would enable him to obtain a residency and ultimately a full license to practice medicine, that is not a vested property right. See *Berkowitz*, 127 Mich App at 562–563 (holding that appellant had no property interest protected by due process in obtaining a psychology license, because he did not have a legitimate claim to being licensed pursuant to the rules promulgated under the psychologists registration act); *Nolan*, 151 Mich at 655 ("We conclude that appellant's expectation of obtaining a physician's assistant license when his interim license expired was not an interest protected by the Due Process Clause."). Because plaintiff cannot establish that a vested property right is affected, his uncompensated taking claim fails. *In re Certified Question*, 447 Mich at 788.

VII. DUE PROCESS OR STATUTORY RIGHT TO AN ADMINISTRATIVE HEARING

Lastly, plaintiff argues that he was denied his due process and statutory right to an administrative hearing. We disagree.[9]

No person may be deprived of life, liberty, or property without due process of law. US Const, Am V; US Const, Am XIV; Const 1963, art 1, § 17. In this case, plaintiff did not have a due process right to an administrative hearing because, as discussed above, plaintiff cannot establish that a vested property right was affected, and thus he was not deprived, or at risk of being deprived, of a life, liberty, or property interest protected by due process. Due process protections are only required when a life, liberty, or property interest is at stake.

Plaintiff also asserts that he was entitled to a hearing pursuant to MCL 333.16232, which states:

> (1) The department shall provide an opportunity for a hearing in connection with the denial, reclassification, limitation, reinstatement, suspension, or revocation of a license or a proceeding to reprimand, fine, order restitution, or place a licensee on probation.

> (2) The department shall provide an opportunity for a hearing in connection with the denial, limitation, suspension, revocation, or reinstatement of a registration or a proceeding to reprimand, fine, order restitution, or place a registrant on probation.

---

[9] This Court reviews constitutional questions de novo. *In re Ayers*, 239 Mich App at 10. Likewise, whether plaintiff had a right to an administrative hearing pursuant to MCL 333.16232(1) is an issue of statutory interpretation, which presents a question of law reviewed de novo. *Huron Behavioral Health*, 293 Mich App at 497.

(3) A disciplinary subcommittee shall meet within 60 days after receipt of the recommended findings of fact and conclusions of law from a hearings examiner to impose a penalty.

(4) Only the department shall promulgate rules governing hearings under this article, article 7, or article 8 and related preliminary proceedings.

The statute does state that "the department shall provide an opportunity for a hearing in connection with the denial . . . of a license . . . ." MCL 333.16232(1). However, in the instant dispute, defendants did not actually deny plaintiff a license. Rather, they informed plaintiff that the "limited license" he sought did not exist and was not authorized by statute or rules, rejected his self-made "application" for the non-existent license, and refunded his money. This was not a "denial . . . of a license," because no such license exists and no such license is authorized under the Public Health Code. Plaintiff did not have a right to a hearing under these circumstances, where he filed an application for a non-existent license.

Affirmed.

/s/ David H. Sawyer
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro