# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* BGP, Minor.

FOR PUBLICATION
July 11, 2017
9:05 a.m.

No. 333700
Oakland Circuit Court
Family Division
LC No. 2015-837535-AD

---

*In re* JSP, Minor.

No. 333813
Oakland Circuit Court
Family Division
LC No. 2016-838283-AD

---

Before: SAAD, P.J., and METER and MURRAY, JJ.

SAAD, P.J.

In these consolidated cases, nonparty[1] American Adoptions, Inc., appeals the circuit court's order that disallowed the payment of administrative and marketing fees by the adoptive parents related to the adoption of two minors in Michigan. For the reasons provided below, we reverse in part and remand.

## I. BACKGROUND

Both cases arise from the adoption of a minor child under the Adoption Code, MCL 710.21 *et seq.* These cases specifically involve the fees paid by the respective adoptive parents (petitioners) for services ostensibly related to the adoption process. American Adoptions is a

---

[1] American Adoptions was not a party at the trial court, but because the trial court denied fees that were to be paid to it, it filed the appeal in this Court.

-1-

not-for-profit adoption agency based in Kansas, petitioners reside outside of Michigan,[2] and the adoptee children were born in Michigan.

As required by MCL 710.54(7), the adoptive parents in each case submitted a verified accounting and a supplement to their verified accounting, which detailed the payments made purportedly in connection with their adoption of children born in Michigan. In both cases, petitioners identified American Adoptions as the payee of the administrative fee and American Family Media as the payee of the marketing fee. Petitioners attached, in addition to other documents, a letter from American Adoptions that explained its fees.[3] The letters were written by Wade Morris, the Director of Community Resources for American Adoptions, and addressed to petitioners' attorney (same attorney in each case). We infer that because American Family Media—and not American Adoptions—received the marketing fee from petitioners, Morris's letter did not reference any marketing fee. With respect to the administrative fee, Morris stated the following, in pertinent part:

> This fee covers other general overhead expenses relating to various administrative functions of American Adoptions or other Adoption Professionals, including but not limited to the many and various administrative functions that American Adoptions or other Adoption Professionals undertake prior to an adoption opportunity. This fee is fully refundable if the adoption opportunity is ultimately unsuccessful.[4]

Morris explained that American Adoptions's monthly cost for such overhead expenses totaled approximately $267,000.

The circuit court approved all of the requested fees and costs, with the exception of the administrative fees and marketing fees. In Docket No. 333700, the circuit court disallowed $7,250 in administrative fees and $4,000 in marketing fees. In Docket No. 333813, the circuit court rejected $4,495 in administrative fees and $10,000 in marketing fees. The circuit court in both cases did not provide any explanation for its denial of these particular fees.[5]

## II. DUE PROCESS

---

[2] The petitioners in Docket No. 333700 reside in Hawaii, and the petitioners in Docket No. 333813 reside in Nebraska.

[3] The submitted letters in both cases are essentially the same except for the background information pertaining to the respective petitioners and the respective adoptee children.

[4] Morris provided a nonexhaustive list of examples of overhead expenses: contract labor, IT services, its legal fees, postage, payroll, health insurance, professional insurance, telephone, medical records, office supplies, and rent.

[5] American Adoptions unsuccessfully sought to have the trial court reconsider its decision in both cases.

American Adoptions argues on appeal that it was denied due process because it was unable to participate in a hearing related to the approval of the fees. We review this unpreserved constitutional issue for plain error affecting substantial rights.[6] *Demski v Petlick*, 309 Mich App 404, 463; 873 NW2d 596 (2015).

The United States and Michigan Constitutions provide that "[n]o person may be deprived of life, liberty, or property without due process of law." *Murphy-DuBay v Dep't of Licensing & Regulatory Affairs*, 311 Mich App 539, 558; 876 NW2d 598 (2015), citing US Const, Am V; US Const, Am XIV, § 1; Const 1963, art 1, § 17. Thus, "[d]ue-process protections are only required when a life, liberty, or property interest is at stake." *Id.* "To have a protected property interest, one must possess more than a unilateral expectation to the claimed interest; the claimant must have a legitimate claim of entitlement." *York v Civil Serv Comm*, 263 Mich App 694, 702-703; 689 NW2d 533 (2004) (quotation marks and citation omitted). Here, there is no doubt that American Adoptions had a property interest in the administrative fee because the adoptive parents were contractually bound to pay this fee to it.[7]

At its core, "[d]ue process requires the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 702 (quotation marks and citations omitted). Here, American Adoptions cannot show how any plain error affected its substantial rights. First, although American Adoptions may not have been formally invited to participate in the proceedings at the circuit court because it was not a party to the adoption, it nonetheless was able to successfully present its views regarding the administrative fees to the circuit court through the "fee explanation" letters written by Morris. Thus, the court received materials to consider petitioners' request to approve the fees, and among those materials was American Adoptions's letter outlining what the administrative fees covered. Importantly, "[a]n oral hearing is not necessary to provide a meaningful opportunity to be heard." *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 460; 688 NW2d 523 (2004).[8] Consequently, American Adoptions has failed to prove any plain error by virtue of the fact that no formal hearing was held.

---

[6] Although American Adoptions raised the issue in its respective motions for reconsideration, "[w]here an issue is first presented in a motion for reconsideration, it is not properly preserved." *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009).

[7] However, American Adoptions did not have a property interest in any marketing/advertising fee because it was not the recipient of such a fee (American Family Media was) and there is nothing in the record to show that American Adoptions was entitled to any portion of that fee. Additionally, American Adoptions stated in its briefs on appeal that, although it recommends American Family Media to its clients, these prospective adoptive parents are free to hire any media company they desire. Accordingly, with respect to the marketing fee, American Adoptions was not entitled to any due process.

[8] In fact, counsel for American Adoptions at oral argument in this Court took the position that the letter written by Morris was sufficient to convey American Adoptions's interests and position, such that no further hearing should have been necessary. Counsel instead claimed that a hearing was necessary only when the court issued the adverse decision. We find no support for the view

III. ADMINISTRATIVE FEE

American Adoptions claims that the circuit court erred when it denied the approval of the administrative fee. We review the circuit court's decision for an abuse of discretion. See *In re KMN*, 309 Mich App 274, 294; 870 NW2d 75 (2015). And we review issues of statutory interpretation de novo. *Auto-Owners Ins Co v Dep't of Treasury*, 313 Mich App 56, 68-69; 880 NW2d 337 (2015).

"MCL 710.54 of the Adoption Code governs authorized charges and fees in adoption cases." *In re MJG*, ___ Mich App ___; ___ NW2d ___ (2017) (Docket No. 332928), slip op, p 4. The statute provides as follows:

(1) Except for charges and fees approved by the court, a person shall not pay or give, offer to pay or give, or request, receive, or accept any money or other consideration or thing of value, directly or indirectly, in connection with any of the following:

(a) The placing of a child for adoption.

(b) The registration, recording, or communication of the existence of a child available for adoption.

(c) A release.

(d) A consent.

(e) A petition.

(2) Except for a child placing agency's preparation of a preplacement assessment described in section 23f of this chapter or investigation under section 46 of this chapter, a person shall not be compensated for the following activities:

(a) Assisting a parent or guardian in evaluating a potential adoptive parent.

(b) Assisting a potential adoptive parent in evaluating a parent or guardian or adoptee.

(c) Referring a prospective adoptive parent to a parent or guardian of a child for purposes of adoption.

(d) Referring a parent or guardian of a child to a prospective adoptive parent for purposes of adoption.

---

that an adverse decision acts to implicate or trigger due process. The key is whether there was a meaningful opportunity to be heard *before* the decision was rendered, and in this case, the information American Adoptions wanted to present to the trial court was indeed presented.

(3) An adoptive parent may pay the reasonable and actual charge for all of the following:

> (a) The services of a child placing agency in connection with an adoption.

> (b) Medical, hospital, nursing, or pharmaceutical expenses incurred by the birth mother or the adoptee in connection with the birth or any illness of the adoptee, if not covered by the birth parent's private health care payment or benefits plan or by Medicaid.

> (c) Counseling services related to the adoption for a parent, a guardian, or the adoptee.

> (d) Living expenses of a mother before the birth of the child and for no more than 6 weeks after the birth.

> (e) Expenses incurred in ascertaining the information required under this chapter about an adoptee and the adoptee's biological family.

> (f) Legal fees charged for consultation and legal advice, preparation of papers, and representation in connection with an adoption proceeding, including legal services performed for a biological parent or a guardian and necessary court costs in an adoption proceeding.

> (g) Traveling expenses necessitated by the adoption.

(4) An adoptive parent shall pay the reasonable and actual charge for preparation of the preplacement assessment and any additional investigation ordered pursuant to section 46 of this chapter.

(5) A prospective adoptive parent shall pay for counseling for the parent or guardian related to the adoption, unless the parent or guardian waives the counseling pursuant to section 29 or 44.

(6) A payment authorized by subsection (3) shall not be made contingent on the placement of the child for adoption, release of the child, consent to the adoption, or cooperation in the completion of the adoption. If the adoption is not completed, an individual who has made payments authorized by subsection (3) may not recover them.

(7) At least 7 days before formal placement of a child under section 51 of this chapter, the following documents shall be filed with the court:

> (a) A verified accounting signed by the petitioner itemizing all payments or disbursements of money or anything of value made or agreed to be made by or on behalf of the petitioner in connection with the adoption. The accounting shall include the date and amount of each payment or disbursement made, the name and address of each recipient, and the

purpose of each payment or disbursement. Receipts shall be attached to the accounting.

(b) A verified statement of the attorney for each petitioner itemizing the services performed and any fee, compensation, or other thing of value received by, or agreed to be paid to, the attorney for, or incidental to, the adoption of the child. If the attorney is an adoption attorney representing a party in a direct placement adoption, the verified statement shall contain the following statements:

> (*i*) The attorney meets the requirements for an adoption attorney under section 22 of this chapter.

> (*ii*) The attorney did not request or receive any compensation for services described in section 54(2) of this chapter.

(c) A verified statement of the attorney for each parent of the adoptee itemizing the services performed and any fee, compensation, or other thing of value received by, or agreed to be paid to, the attorney for, or incidental to, the adoption of the child. If the attorney is an adoption attorney representing a party in a direct placement adoption, the verified statement shall contain the following statements:

> (*i*) The attorney meets the requirements for an adoption attorney under section 22 of this chapter.

> (*ii*) The attorney did not request or receive any compensation for services described in section 54(2) of this chapter.

(d) A verified statement of the child placing agency or the department itemizing the services performed and any fee, compensation, or other thing of value received by, or agreed to be paid to, the child placing agency or the department for, or incidental to, the adoption of the child, and containing a statement that the child placing agency or the department did not request or receive any compensation for services described in section 54(2) of this chapter.

(8) At least 21 days before the entry of the final order of adoption, the documents described in subsection (7) shall be updated and filed with the court.

(9) To assure compliance with limitations imposed by this section and section 55 of this chapter and by section 14 of Act No. 116 of the Public Acts of 1973, being section 722.124 of the Michigan Compiled Laws, the court may require sworn testimony from persons who were involved in any way in informing, notifying, exchanging information, identifying, locating, assisting, or in any other way participating in the contracts or arrangements that, directly or indirectly, led to placement of the individual for adoption.

(10) The court shall approve or disapprove all fees and expenses. Acceptance or retention of amounts in excess of those approved by the court constitutes a violation of this section.

(11) A person who violates this section is guilty of a misdemeanor punishable by imprisonment for not more than 90 days or a fine of not more than $100.00, or both, for the first violation, and of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $2,000.00, or both, for each subsequent violation. The court may enjoin from further violations any person who violates this section.

At the outset, while "the plain language of MCL 710.54(10) requires court approval of '*all* fees and expenses,' " this is to be understood in context with the initial requirement under MCL 710.54(7)(a) that only those fees for services that were done "in connection with the adoption" need to be submitted. *In re MJG*, ___ Mich App at ___; slip op at 7-8. Simply put, "if a fee is for a service that is not related to the adoption itself, then it does not fall under the scope of the statute, and the circuit court has no authority to preclude the expense." *Id.* at ___; slip op at 8. Thus, the approval process of MCL 710.54 is only implicated if the fee at issue is for a service that is connected with the adoption itself. *Id.* at ___; slip op at 8. Once it is determined that a particular fee is subject to court approval, the statutory scheme is as follows:

> MCL 710.54(1) merely prohibits charges and fees for its enumerated items, unless they are approved by the court. Thus, absent any authorization from a court, these expenses are squarely prohibited. The statute similarly prohibits fees and charges for the activities in MCL 710.54(2), unless they are done for particular purposes and performed by a "child placing agency," [as defined in MCL 710.22(k)]. MCL 710.54(3) lists the charges that an adoptive parent may pay. Because such charges are authorized under subsection (3), the circuit court must approve fees that fall under this subsection if they are for reasonable and actual charges. MCL 710.54(3). [*In re MFG*, ___ Mich App at ___; slip op at 8 (footnote omitted).]

Importantly, the list of allowable expenses for adoptive parents under subsection (3) is exclusive. *Id.* at ___; slip op at 8. Further, "MCL 710.54(4) and (5) list fees that an adoptive parent must pay, and, thus, the circuit court is also required to approve fees that fall under these subsections" as well. *Id.* at ___; slip op at 8.

In its briefs on appeal, American Adoptions initially claimed that it is entitled to its administrative fees because, as a child placing agency, the fees are explicitly permitted under MCL 710.54(3)(a). A "child placing agency" is defined as "a private organization licensed under 1973 PA 116, MCL 722.111 to 722.128, to place children for adoption." MCL 710.22(k). However, there is no evidence to show that American Adoptions is licensed under 1973 PA 116. Indeed, American Adoptions has conceded in its reply briefs on appeal that it does not qualify as a child placing agency.

Instead, in its reply briefs, American Adoptions asserts that the administrative fees should have been approved because they are not prohibited under MCL 710.54(1) or (2). But merely

because a fee is not prohibited under MCL 710.54(1) or (2) does not mean that it is automatically allowable. If the fee is properly before the court, it must also be authorized under some other subsection.

American Adoptions fails to identify which subsection authorizes these administrative fees. However, this failure is not fatal to its appeal because after reviewing the administrative services, we do not believe that these services were specifically performed in connection with the adoptions that occurred here. In other words, the administrative overhead services did not have a relationship in fact with the particular adoptions, which means that the court was not authorized to rule on the appropriateness of the fees. See *In re MFG*, ___ Mich App at ___; slip op at 8. Here, the fee was for overhead expenses that were not specifically related to any particular adoption. Indeed, the expenses were for items such as general contract labor, IT services, payroll, health insurance, professional insurance, office supplies, and rent. Due to the nature of what these overhead services entailed, we hold that the services were not connected, or related in fact, to the two adoptions.[9] As a result, the circuit court had no authority to deny these fees. On remand, the circuit court is to approve the fees for these administrative fees.

## IV. MARKETING FEE

American Adoptions also argues that the circuit court erred when it failed to approve the $4,000 and $10,000 marketing fees in the two cases. While we held in the companion case, *In re MFG*, ___ Mich App at ___; slip op at 10, 13, that these types of marketing fees fall outside the scope of the statute and therefore a court has no authority to deny such fees, we hold that American Adoptions lacks standing to raise this issue here.

> To have standing, a party must have a legally protected interest that is in jeopardy of being adversely affected. The party must have a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large . . . . A plaintiff must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties. [*People v Sledge*, 312 Mich App 516, 525; 879 NW2d 884 (2015) (quotation marks and citations omitted).]

The record is clear that the marketing fees were initially paid to a company called American Family Media, LLC. This is undisputed as (1) petitioners' verified accounting forms show that the money was paid to American Family Media, (2) the refunded money (after the court disapproved the fee) was issued to petitioners by American Family Media, (3) American Adoptions in its fee explanation letter did not reference the marketing fee, (4) American Adoptions acknowledged in its filings with this Court and the circuit court that "[t]he marketing

---

[9] We agree with American Adoptions's view that the mere fact that a petitioner lists fees on the approval form does not mean that they all necessarily fall under the scope of the statute. It is incumbent on the circuit court, when disapproving fees, to ensure that they fall under the scope of the statute. Because the failure to properly disclose fees can be a criminal offense, MCL 710.54(11), petitioners may be inclined to list more than is actually required under the statute.

fee is from a separate company, American Family Media, LLC," and (5) American Adoptions allows adoptive parents to utilize the media company of their choice. Because there is no evidence of any connection between the marketing fees at issue and American Adoptions, we hold that American Adoptions lacks standing to challenge the denial of the marketing fees. No decision we make on this issue can affect American Adoptions. The only parties who would have standing to challenge the denial of the marketing fees are petitioners and American Family Media. This is distinguishable from the facts in *In re MJG*, where the appellant firm was the recipient of the marketing fee and had an identifiable interest in the matter. *In re MJG*, ___ Mich App at ___; slip op at 3, 10. Accordingly, because American Adoptions lacks standing, we decline to address the circuit court's denial of the marketing fees.[10]

Reversed in part and remanded for proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs, as no party on appeal prevailed in full.

/s/ Henry William Saad
/s/ Patrick M. Meter
/s/ Christopher M. Murray

---

[10] Likewise, American Adoptions is precluded from raising any First Amendment issues related to the marketing fee.