# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL LONG,

        Plaintiff-Appellant,

v

LIQUOR CONTROL COMMISSION,

        Defendant-Appellee.

FOR PUBLICATION
November 16, 2017
9:05 a.m.

No. 335723
Charlevoix Circuit Court
LC No. 16-069125-CC

Before: HOEKSTRA, P.J., and STEPHENS and SHAPIRO, JJ.

PER CURIAM.

In this inverse condemnation action, the trial court granted summary disposition under MCR 2.116(C)(8) to defendant the Liquor Control Commission ("the LCC") and denied plaintiff Michael Long's motion to amend his complaint. Plaintiff now appeals as of right. Because plaintiff failed to state a claim for inverse condemnation and amendment of his complaint would be futile, we affirm.

Plaintiff owns and operates a liquor store, known as "Par-T-Pac," in Boyne City, Michigan. Since 1990, he has held a specially designated distributor ("SDD") liquor license, which allows him to sell alcohol for off-premises consumption under the Michigan Liquor Control Code of 1998, MCL 436.1101 *et seq.* See MCL 436.1111(12); MCL 436.1533(4). In August of 2013, the LCC issued an SDD license under the "resort" provision in MCL 436.1531(5) to a Family Fare supermarket in Boyne City. Under the "resort" provision of MCL 436.1531(5), Family Fare was able to obtain its SDD license without abiding by the quota and distance restrictions that would have otherwise applied to a new applicant for an SDD license. See MCL 436.1533(4); Mich Admin Code R 436.1133 (rescinded 2017).[1] In other words, Family Fare was able to obtain an SDD license even though it is located less than 2,640 feet

---

[1] Generally, MCL 436.1533(4) limits the number of SDD liquor licenses to 1 for each 3,000 persons, or fraction of 3,000, in the population of a city, incorporated village, or township. In terms of spacing between SDD licenses, Mich Admin Code R 436.1133 prohibited the LCC from granting a license or allowing transfer of a license's location "if there [was] an existing [SDD] license located within 2,640 feet of the proposed site." Mich Admin Code R 436.1133 was rescinded in 2017, but it was in effect when Family Fare obtained its SDD license in 2013.

from plaintiff's store and even though Boyne City already had its quota of SDD liquor licenses based on the population of Boyne City. See MCL 436.1531(5); MCL 436.1533(4); Mich Admin Code R 436.1133.

On August 12, 2016, proceeding *in propria persona*, plaintiff filed a complaint in circuit court against the LCC. Plaintiff's complaint indicates that, since Family Fare received its SDD license, Par-T-Pac has seen a significant reduction in sales and, as a result, the value of his liquor license has been significantly reduced. Plaintiff alleged that the loss of sales and the reduced value of the liquor license "essentially" amounted to an "unfair taking" of the liquor license and resulted in a "form of Eminent Domain" that "steals all of [plaintiff's] equity and value, and transfers it unfairly to Family Fare."

In response to plaintiff's complaint, the LCC filed a motion for summary disposition. Pertinent to this appeal, the LCC maintained that plaintiff failed to plead the elements of a de facto taking because there was no allegation that the LCC abused its legitimate powers in affirmative actions directly aimed at plaintiff's property and because the granting of a license to a private corporation to conduct a private business could not be regarded as the taking of private property by the government for public use. Before the trial court decided the LCC's motion for summary disposition, plaintiff obtained an attorney, and his attorney filed a motion for leave to file an amended complaint containing one count of inverse condemnation based on the theory that plaintiff had a property interest in his liquor license and the LCC effectively took this property and transferred it to a private entity, namely Family Fare, for economic development. Following a hearing on the parties' motions, the trial court granted summary disposition to the LCC under MCR 2.116(C)(8) and denied plaintiff's motion to amend his complaint because such amendment would be futile. Plaintiff now appeals as of right.

On appeal, plaintiff argues that the trial court erred by granting summary disposition and by denying his motion to amend his complaint. Plaintiff contends that he has a property interest in his liquor license and, in particular, a right to the protections afforded by the quota and distance requirements governing SDD licenses, which restricted competition and assured that plaintiff's license had a particular value. According to plaintiff, by exempting Family Fare from these requirements to promote tourism under the "resort" provision of MCL 436.1531(5), the LCC effectively transferred the value of plaintiff's property interests to Family Fare for the benefit of the public. In contrast, the LCC maintains that, while plaintiff may have a property interest in his liquor license, that interest does not provide him with a property right to be free from competition or to enjoy set profits. Additionally, the LCC contends that, to the extent plaintiff has a property interest in his liquor license, his claims fail because any action taken by the LCC in issuing a license to Family Fare was not aimed directly at plaintiff's property.

As explained below, we agree with the LCC that plaintiff lacked a property right in being free from increased competition and that the LCC's actions in issuing an SDD license to Family Fare were not aimed directly at plaintiff's liquor license. In these circumstances, the trial court did not err by granting summary disposition to the LCC under MCR 2.116(C)(8), and the trial court did not abuse its discretion by denying plaintiff's motion to amend his complaint because any amendment would be futile.

I. STANDARDS OF REVIEW

We review de novo a trial court's decision to grant summary disposition. *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007). Constitutional issues, including claims relating to the taking of private property, are also reviewed de novo. *Id.* In this case, the trial court specified that it granted summary disposition under MCR 2.116(C)(8). A motion under this subrule "tests the legal sufficiency of the complaint based on the pleadings alone." *Gallagher v Persha*, 315 Mich App 647, 653; 891 NW2d 505 (2016). In reviewing a motion under MCR 2.116(C)(8), "[a]ll factual allegations supporting the claim and any reasonable inferences that can be drawn from the facts are accepted as true." *Lakin v Rund*, 318 Mich App 127, 131; 896 NW2d 76 (2016). The motion is properly granted "when the claims are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Gallagher*, 315 Mich App at 653 (citation and quotation marks omitted).

A trial court's decision on a motion to amend a complaint is reviewed for an abuse of discretion. *Trowell v Providence Hosp & Med Ctrs, Inc*, 316 Mich App 680, 690; 893 NW2d 112 (2016). Under MCR 2.116(I)(5), if summary disposition is granted based on MCR 2.116(C)(8), "the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." "Leave to amend the pleadings should be freely granted to the nonprevailing upon a grant of summary disposition unless the amendment would be futile or otherwise unjustified." *Lewandowski v Nuclear Mgt*, 272 Mich App 120, 126-127; 724 NW2d 718 (2006).

## II. ANALYSIS

"The Fifth Amendment of the United States Constitution and Article 10 of the Michigan Constitution both prohibit the taking of private property for public use without just compensation." *Dorman v Twp of Clinton*, 269 Mich App 638, 645; 714 NW2d 350 (2006). "[T]o ensure the protections of this guarantee, the State of Michigan recognizes a cause of action, often referred to as an inverse or reverse condemnation suit, for a de facto taking when the state fails to utilize the appropriate legal mechanisms to condemn property for public use." *Peterman v State Dep't of Nat Res*, 446 Mich 177, 187-188; 521 NW2d 499 (1994). "A de facto taking can occur without a physical taking of the property; a diminution in the value of the property or a partial destruction can constitute a taking." *Cummins v Robinson Twp*, 283 Mich App 677, 708; 770 NW2d 421 (2009) (citation and quotation marks omitted). "[T]he plaintiff must prove that the government's actions were a substantial cause of the decline of the value of the plaintiff's property and must establish that the government abused its legitimate powers in affirmative actions directly aimed at the plaintiff's property." *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 295; 769 NW2d 234 (2009).

Notably, as a preliminary matter, "[o]ne who asserts an uncompensated taking claim must first establish that a vested property right is affected." *In re Certified Question*, 447 Mich 765, 788; 527 NW2d 468 (1994). See also *Adams Outdoor Advertising v East Lansing (After Remand)*, 463 Mich 17, 24; 614 NW2d 634 (2000). "Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Mich Soft Drink Ass'n v Dep't of Treasury*, 206 Mich App 392, 403; 522 NW2d 643 (1994) (citation and quotation marks omitted). "A vested property right is an interest that is more than a mere expectation." *Murphy-DuBay v Dep't of Licensing & Regulatory Affairs*, 311 Mich App 539, 557; 876 NW2d 598 (2015). A vested property right requires a

legitimate claim of entitlement based on something more than "an anticipated continuance of the present general laws." *In re Certified Question*, 447 Mich at 788 (citation and quotation marks omitted); *Murphy-DuBay*, 311 Mich App at 557.

In this case, analysis of whether plaintiff has a vested property right requires a determination of precisely what interests plaintiff claims have been taken by the LCC's actions. Plaintiff generally asserts that he has a property interest in his "liquor license," a proposition which the LCC does not dispute. See *Bundo v Walled Lake*, 395 Mich 679, 693-695; 238 NW2d 154 (1976) (holding that a licensee had a property interest in his liquor license and, in particular, a property interest "in obtaining a renewal of his liquor license"). However, plaintiff has not alleged a taking of his liquor license. To the contrary, it is undisputed that plaintiff still has his liquor license and he still has the use of the license. He remains free to sell alcohol in Boyne City.

Considering plaintiff's allegations and arguments, in actuality, the "property" which plaintiff contends has been taken is not his liquor license, it is the right to be free from increased competition and to retain a set market share in the liquor industry in Boyne City based on the quota and distance requirements which governed SDD licenses before Family Fare obtained its license in 2013. This is reflected in plaintiff's arguments in his appellate brief, wherein he maintains that, before Family Fare received its SDD license, he "enjoyed the benefits of the State's regulation of the industry." Specifically, he asserts that his "business was protected from competition by quota and distance requirements," which prevented other private citizens or corporations from simply joining the market, and that these requirements ensured that plaintiff's "license had a particular value." Similarly, at the hearing in the trial court, plaintiff's attorney asserted that plaintiff had "a right" to a "limited amount of competition" based on quota and distance requirements that served to protect the profitability of the licensee. He contended that, by obtaining a license, the licensee received "part of the market share" with limits on "the level of competition" and that, in this case, the "status quo" consisted of only two SDD licenses in the market. In other words, plaintiff asserted that he had a property right, protected by the provisions of the Michigan Liquor Control Code of 1998, to a share of the liquor market based on there being only two SDD licenses in Boyne City. According to plaintiff, by allowing the introduction of a third competitor into the market, the LCC has taken plaintiff's "property" by decreasing his share of the market, devaluing the resale value of plaintiff's license, and reducing his sales of alcohol.

Fairly read, what plaintiff actually alleges is a loss of an oligopoly resulting from the increase of competition due to the issuance of a liquor license to Family Fare. Recognizing the "property" which plaintiff claims has been taken, the question becomes does plaintiff possess a property right to be free from increased competition in the sale of alcohol in Boyne City? See *Adams Outdoor Advertising*, 463 Mich at 24 (considering, as a preliminary question, whether the claimant possesses the interest he alleges is being taken). In our judgment, the answer to this question is no.

An individual who possesses an SDD liquor license under the Michigan Liquor Control Code of 1998 has the right to sell alcohol for off-premises consumption in accordance with the law. See MCL 436.1111(12), MCL 436.1533(4). But, an SDD liquor license does not provide property rights to be free from competition in the sale of liquor, to have a set share in the market,

or to enjoy a particular level of alcohol sales or profitability. These rights are simply not afforded by the Michigan Liquor Control Code of 1998. To the contrary, by its express terms, MCL 436.1531(5) makes plain that, aside from SDD licenses issued in accordance with the quota restrictions in MCL 436.1533(4), up to 15 additional SDD "resort" licenses may be issued in communities with a population under 50,000 and these licenses may be issued for locations within 2,640 feet of an existing license. The possibility of these 15 additional licenses wholly undercuts plaintiff's assertion that he had a vested property right to a market share based on the existence of only two SDD licenses in Boyne City. Indeed, even under the quota restrictions, the number of SDD licenses in Boyne City could increase based on population growth, MCL 436.1533(4); and, the Michigan Liquor Control Code of 1998 provides no assurance that a new SDD licensee would not impact plaintiff's business. The quota requirements could also be waived if there was no existing SDD licensee within two miles of the applicant's proposed location, MCL 436.1533(4); and, again, there is no guarantee that the entry of a competitor into the market would not affect plaintiff's business. Given that the law specifically allows for the issuance of additional SDD licenses, plaintiff cannot legitimately claim that he was entitled to retain a specific market share, to exclude competition from the market, or to enjoy a set level of sales or profits. In these circumstances, he has not shown a property interest in being free from competition under the Michigan Liquor Control Code of 1998 and his takings claim premised on the LCC's issuance of an SDD "resort" license to Family Fare must fail.

In support of this conclusion we note that, contrary to plaintiff's claim that he has a property right to a restricted liquor market, numerous courts, considering whether government action that has the effect of increasing competition constitutes a "taking," have recognized that there is no constitutionally protected property right to be free from competition, to have a monopoly or oligopoly over an industry, or to obtain economic benefit from a license, even in industries where governmental regulation had traditionally limited the amount of competition. See, e.g., *Illinois Transp Trade Assn v Chicago*, 839 F3d 594, 596 (CA 7 2016) ("'Property' does not include a right to be free from competition."); *Joe Sanfelippo Cabs, Inc v Milwaukee*, 839 F3d 613, 615 (CA 7 2016) ("[A] taxi permit confers only a right to operate a taxicab . . . . It does not create a right to be an oligopolist, and thus confers no right to exclude others from operating taxis."); *Minneapolis Taxi Owners Coalition, Inc v Minneapolis*, 572 F3d 502, 508-509 (CA 8 2009) ("The taxicab licenses themselves do not carry an inherent property interest guaranteeing the economic benefits of using the taxicab license. . . . [and] any property interest that the taxicab-license holders' may possess does not extend to the market value of the taxicab licenses derived through the closed nature of the City's taxicab market."); *Rogers Truck Line, Inc v United States*, 14 Cl Ct 108, 115 (1987) ("[P]laintiff does not have a constitutionally protected freedom from competition"); *Jaffe v United States*, 618 F2d 122 (1979) ("[T]here is no constitutional right to be free of competition or to enjoy a monopoly . . . . Nor are alleged anticipated profits protected by the just compensation clause."); *Jackson Sawmill Co, Inc v United States*, 580 F2d 302, 307 (CA 8 1978) ("[A]ppellants possessed no constitutionally protected interest in a monopoly over traffic travelling between St. Louis and East St. Louis."); *Miadeco Corp v Miami-Dade Co*, 249 F Supp 3d 1296 (SD Fla 2017) ("Plaintiffs' property rights derived from their [taxi] medallions do not confer on them a fully restricted market or a

monopoly on all for-hire transportation.").[2] See also *Mich Soft Drink Ass'n*, 206 Mich App at 405 ("[T]here is no property right to potential or future profits.") (citation omitted). These cases persuasively reason that "collateral interests" of ownership are not "property" protected by the constitution. See *Minneapolis Taxi Owners Coalition, Inc*, 572 F3d at 509. The same is true of the SDD liquor license issued to plaintiff. The only right afforded to plaintiff by the SDD license is the right to sell alcohol. He may have incidentally enjoyed the economic benefits of a restricted market based on quota and distance requirements; but, given the LCC's authority to issue additional SDD licenses in keeping with MCL 436.1531(5) and MCL 436.1533(4), plaintiff had no legitimate claim of entitlement to a market limited to two SDD licenses and any incidental benefits of governmental regulation of the liquor industry did not constitute property rights. As such, plaintiff cannot maintain a claim for inverse condemnation based on the allegation that the LCC took part of his market share by allowing for increased competition.

Setting aside plaintiff's erroneous assertion that he has a property right to be free from increased competition or to enjoy a set share in the Boyne City market, at most, plaintiff has some general property interest in his SDD license. See *Bundo*, 395 Mich at 693-695. But, plaintiff cannot prevail on his taking claim based on this interest because he has not alleged affirmative action by the LCC aimed directly at this property. See *Marilyn Froling Revocable Living Trust*, 283 Mich App at 295. That is, the LCC's action was not aimed directly at plaintiff's SDD license. The LCC did not revoke plaintiff's license, refuse renewal of his license, or restrict his use of the license to sell alcohol. Instead, the government action consisted of simply issuing a license to Family Fare as permitted by MCL 436.1531(5). If plaintiff was harmed by the issuance of the license, any harm was incidental to government actions for the benefit of Family Fare and the alleged harm resulted because Family Fare proved to be an able competitor in the sale of alcohol for off-premises consumption. These sorts of incidental or consequential effects of government action do not amount to government action aimed directly at plaintiff's property. See *Marilyn Froling Revocable Living Trust*, 283 Mich App at 295; *Spiek v Mich Dep't of Transp*, 456 Mich 331, 345; 572 NW2d 201 (1998); *Rogers Truck Line, Inc*, 14 Cl Ct at 114. Indeed, as previously recognized by this Court, when the government grants a license to a third-party, this "granting of a license to a private citizen or a private corporation for the purpose of allowing that person or corporation to conduct a private business cannot be regarded as a taking of private property by the government for public use." *Attorney Gen v Ankersen*, 148 Mich App 524, 561; 385 NW2d 658 (1986).[3] See also *Marilyn Froling Revocable Living Trust*, 283 Mich App at 295. Accordingly, plaintiff cannot show that issuing an SDD license to Family Fare constituted government action aimed directly at plaintiff's SDD liquor license.

---

[2] Although decisions of other state courts and lower federal courts are not binding on this Court, we may consider them as persuasive authority. *Travelers Prop Cas Co of Am v Peaker Servs, Inc*, 306 Mich App 178, 188; 855 NW2d 523 (2014).

[3] While *Ankersen* is not binding because it was decided before 1990, it may be considered for its persuasive value. See MCR 7.215(J)(1); *In re Stillwell Trust*, 299 Mich App 289, 298 n 1; 829 NW2d 353 (2012).

In sum, plaintiff does not have a property right to be free from increased competition and he cannot state a claim for inverse condemnation based on the assertion that the LCC took part of his market share by allowing increased competition. Additionally, to the extent plaintiff has a property interest in his liquor license, he cannot plead a viable claim of inverse condemnation because the issuing of a license to Family Fare did not constitute government action aimed directly at plaintiff's liquor license. Consequently, the trial court properly granted the LCC's motion for summary disposition under MCR 2.116(C)(8) and denied plaintiff's motion to amend his complaint because any amendment would have been futile, *Lewandowski*, 272 Mich App at 126-127.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro