*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GRAVITY IMAGING, LLC, formerly known as
HORIZON IMAGING, LLC,

Plaintiff/Counterdefendant-Appellant,

v

814 BERKLEY, LLC,

Defendant/Counterplaintiff-Appellee.

UNPUBLISHED
August 18, 2022

No. 357548
Oakland Circuit Court
LC No. 2020-182922-CB

Before: SAWYER, P.J., and SHAPIRO and REDFORD, JJ.

PER CURIAM.

In this action alleging breach of a commercial lease and a license agreement for use of a parking lot, plaintiff, Gravity Imaging, LLC, appeals as of right the May 28, 2021 stipulated judgment. Plaintiff contends that the trial court erred by granting summary disposition in favor of defendant, 814 Berkley, LLC, by dismissing plaintiff's complaint pursuant to MCR 2.116(C)(8), and by granting summary disposition in favor of defendant on defendant's counterclaim pursuant to MCR 2.116(C)(10). Because the trial court correctly concluded that the lease did not require defendant to initiate proceedings under the summary proceedings statute, MCL 600.5701 *et seq.*, and the license agreement did not grant plaintiff a possessory interest in the parking lot, we affirm.

## I. BACKGROUND

On August 31, 2010, defendant's predecessor, Berkley Twelve Associates, LLC (Berkley 12), as landlord, leased 1,344 square feet of office space to plaintiff's predecessor, Horizon Imaging LLC (Horizon), as tenant, for use as a medical imaging office. The lease provided that, in the event of a default by the tenant, the lease could be terminated by delivery of a notice of termination, with the landlord "entitled to forthwith commence an action in summary proceedings to recover possession of the premises." That same day, Berkley 12 and Horizon signed a license agreement allowing Horizon, as licensee, to use a portion of the parking lot for parking a mobile MRI trailer. The license agreement explicitly provided that it was made in conjunction with the lease, that the default provisions of the lease applied to the license, and that Horizon's use of the

license area was "permissive only" and "shall not give rise to any leasehold, easement, ownership or other right or interest . . . ."

Attachments to the lease and the license agreement granted the tenant the right to cancel both the license agreement and the lease after three years by providing 90 days advance notice to the landlord; in addition, the attachments provided that if the tenant failed to vacate the licensed premises or leave the leased or licensed premises in the condition required in the lease or license agreement by the date stated in the termination notice, the tenant "shall be deemed to be a trespasser and Landlord and its successors and assigns may institute eviction proceedings against Tenant and Tenant hereby knowingly and irrevocably waives any and all defenses it may have to such eviction proceedings." At some point plaintiff purchased the MRI business from Horizon and, after two extensions, the lease and license agreement were scheduled to expire on December 31, 2019. In April 2019, defendant purchased the property from Berkley 12. With the purchase, defendant assumed all "right, title and interest in and to the Leases and all other transferable licenses, contracts, permits and agreements affecting the Property . . . ."

In an e-mail dated December 6, 2019, defendant informed plaintiff that it was negotiating with a child care provider to lease the majority of the building's first floor, which would require alterations to the parking lot, rendering it unsuitable for parking the mobile MRI trailer. On December 9, 2019, plaintiff and defendant agreed to a joint amendment to the lease and parking lot license. This amendment extended the term of both the lease and the license to May 31, 2020.

Plaintiff continued to occupy the premises past the expiration date of May 31, 2020, and paid rent for June and July 2020. On July 31, 2020, defendant mailed a notice to quit informing plaintiff that the leased premises must be vacated by August 31, 2020. A letter accompanying the notice informed plaintiff that the mobile MRI trailer must be removed from the parking lot no later than August 15, 2020, in order to accommodate defendant's plan to repave the lot. By Sunday, August 16, 2020, defendant had already begun demolition of the parking lot.

On August 14, 2020, plaintiff filed this action in the Oakland Circuit Court, seeking damages and injunctive relief, alleging that the case arose from a "leasing agreement and licensing agreement that was merged in December 2019," and that despite serving a "Notice to Quit" the premises by August 31, 2020, defendant had demanded that plaintiff immediately vacate the parking lot and sent a representative to cut power to the premises on Friday, August 14, 2020. In Count I, plaintiff contended that the parties had agreed that any dispute over possession of the property would be resolved through the eviction process, defendant's conduct constituted a breach of that agreement, and plaintiff would be unable to conduct business, causing loss of revenue and other damages. In Count II, plaintiff contended that defendant had failed to comply with Michigan law regarding eviction from real property and had violated the antilockout statute, MCL 600.2918. In Count III, plaintiff contended that defendant's attempt to take possession of the premises violated Michigan's summary proceedings statute, MCL 600.5714. Plaintiff requested entry of a judgment exceeding $25,000 and a temporary restraining order (TRO) or preliminary injunction to prevent defendant from taking possession of the parking lot and office space. Plaintiff did not attach a copy of the lease or license agreement, but did attach a copy of the 2019 joint amendment.

On the same day, plaintiff filed an emergency ex parte motion for a TRO and preliminary injunction, asserting that plaintiff would be irreparably harmed by the loss of use of its business

and possession of the property and would suffer loss of revenue, loss of reputation in the community, and damage to its credit and ability to borrow money. In a supporting brief, plaintiff contended that the parties' agreement required the use of summary eviction proceedings, defendant had failed to do so, and plaintiff was likely to succeed on the merits. Plaintiff also contended that it would suffer irreparable harm, it had no adequate remedy at law, and it would be unjust to allow defendant to proceed with eviction contrary to state law. Plaintiff requested immediate entry of a TRO and a hearing on its request for entry of a preliminary injunction.

On August 17, 2020, defendant filed a response to plaintiff's motion, asserting that plaintiff's motion was moot because the parking lot had already been removed and contending that plaintiff was not likely to succeed on the merits because, under Michigan law, tenants have no possessory interest in common areas and both the lease and license agreement expressly disclaimed any right of plaintiff to possession of the parking lot. That same day, the trial court, proceeding without oral argument pursuant to MCR 2.119(E)(3), signed an order denying plaintiff's motion "pursuant to MCR 3.310(A) and (B), for lack of merit in the grounds presented."

In lieu of answering the complaint, on September 8, 2020, defendant filed a motion for summary disposition under MCR 2.116(C)(8), contending that plaintiff had failed to assert a claim upon which relief could be granted and requesting dismissal of plaintiff's claims, with prejudice. Defendant first asserted that each of plaintiff's claims must fail because the license agreement explicitly stated that plaintiff's use of the parking lot was permissive only and did not grant any leasehold, easement, ownership or other right or interest in the parking lot. Addressing plaintiff's breach-of-contract claim, defendant disputed plaintiff's assertion of an agreement between the parties to use the statutory eviction process to remove plaintiff from the parking lot, contending that, under the lease, defendant retained the right to alter or destroy the common areas and plaintiff had not alleged any agreement that required defendant to employ summary eviction proceedings to remove plaintiff from the parking lot. Addressing plaintiff's statutory claims, defendant contended that the antilockout statute, MCL 600.2918, and the summary proceedings statute, MCL 600.5701 *et seq.*, applied only to tenants; because plaintiff had no leasehold interest in the parking lot, the statutes did not apply in this case.

Defendant filed a counterclaim the following day. In Count I, defendant alleged that plaintiff had breached the lease agreement by failing to pay holdover rent and additional rent, as required by the lease, for June 2020 through September 2020, and failed to reimburse defendant for the cost of making improvements, as required by the lease. In Count II, defendant contended that the 30-day notice period had expired, plaintiff had not vacated the premises, and defendant was entitled to a judgment of possession. As an alternative, in Count III, defendant requested specific performance of the lease and an order requiring that plaintiff vacate the premises.

On September 29, 2020, plaintiff responded to the counterclaim, denying defendant's allegations regarding breach of contract, right to possession of the property, and specific performance as untrue. Plaintiff responded to the motion for summary disposition on November 10, 2020. Plaintiff cited the lease provisions regarding the termination of tenancy, the licensing agreement's reference to the default provisions of the lease and early termination by plaintiff, and the December 2019 joint amendment of the lease and licensing agreement. Plaintiff contended that the contract between the parties was clear and unambiguous, the contract required defendant to commence any eviction through summary proceedings, and the parties purposely tied the license

-3-

agreement to the lease agreement. Plaintiff also contended that defendant's conduct rendered plaintiff's business inoperable and plaintiff had suffered thousands of dollars in damages as a result. Addressing its statutory claims, plaintiff contended that destruction of the parking lot and the concrete slab on which the mobile MRI trailer stood was a forcible entry in violation of the antilockout statute, MCL 600.2918. In conclusion, plaintiff requested the opportunity to amend its complaint if the court found its complaint deficient.

On December 2, 2020, the trial court issued its opinion and order granting defendant's motion for summary disposition on plaintiff's complaint. After summarizing the facts, the court observed that the lease explicitly allowed defendant, without consent of plaintiff, to make alterations or additions to the building or common areas, or to demolish improvements to the land surrounding the building. The court also observed that the license agreement granted plaintiff a revocable license to park a mobile MRI, but explicitly stated that plaintiff's use of the license area did not create a leasehold, easement, or ownership interest. Finally, the court noted that the December 2019 joint amendment provided for termination of both the lease and the license agreement on May 31, 2020.

Addressing plaintiff's breach-of-contract claim, the court recognized that plaintiff's allegations of wrongdoing centered on the demolition of the parking lot before the August 31, 2020 deadline. Noting plaintiff's reliance on the early termination provisions of the lease and license agreement, the court found that these provisions concerned plaintiff's right to cancel the agreement and were permissive in nature, providing that defendant "*may* institute eviction proceedings . . . ." The court found that defendant's rights under the lease did not exclude other rights or remedies allowed by law and held that plaintiff's allegations failed to demonstrate a breach of the lease or license agreement. Moreover, because the license agreement expressly excluded any leasehold, ownership, or other possessory interest in the parking lot, the court found that plaintiff's assertion of eviction as defendant's default remedy lacked merit. Thus, the court ruled that plaintiff's breach-of-contract claim failed as a matter of law.

Turning to plaintiff's statutory claims, the court held that neither the antilockout nor summary proceedings statutes applied because plaintiff had no possessory interest in the parking lot. Thus, the court granted defendant's motion for summary disposition pursuant to MCR 2.116(C)(8) and dismissed the complaint "in its entirety with prejudice." Noting plaintiff's request for leave to amend the complaint, the court concluded that an amendment "would not be justified as Plaintiff's claims fail as a matter of law." However, because defendant's counterclaim remained pending, this order did not close the case.

Twenty days later, plaintiff filed a motion for reconsideration that merely repeated the arguments made in its response to defendant's motion for summary disposition and asserted that the court's decision constituted "palpable error" because "the contractual relationship between the parties required Defendant to exercise any eviction by summary proceeding." On January 4, 2021, the court denied plaintiff's motion for reconsideration, finding that the motion merely repeated the same issues on which the court had already ruled.

One month later, defendant filed a motion seeking summary disposition on its counterclaim pursuant to MCR 2.116(C)(9) and (10), contending that plaintiff had failed to assert any valid defenses, there was no genuine issue of material fact, and defendant was entitled to judgment.

Defendant asserted that the lease required plaintiff to pay defendant's costs in recovering the property, reasonable attorney fees, lost rent, and costs incurred in improving the premises for plaintiff's use. Defendant asserted that there was no question of fact that plaintiff had retained possession of the premises until November 20, 2020, had breached the lease, and had failed to pay the rent due under the lease. Defendant requested judgment in the amount of $89,483.38.

Responding to this motion, plaintiff admitted that rent had not been paid from August through November 2020, but contended that defendant had not provided a letter of intent or an executed lease for the premises. Plaintiff also contended that payments for improvements had been made years earlier, the attorney fees requested by defendant were unreasonable, and an evidentiary hearing was required on that issue.

On April 27, 2021, the trial court issued an opinion and order granting summary disposition in favor of defendant on its counterclaim under MCR 2.116(C)(10), finding no genuine issue of material fact that plaintiff had breached the lease by failing to make rental payments. However, the court found a genuine issue of material fact regarding damages, including rent, cost of improvements and repairs, and the reasonableness of attorney fees. The court dismissed defendant's claims for possession and specific performance as moot and scheduled a bench trial on the issue of damages. On the day scheduled for trial, the parties appeared and placed a settlement on the record. Three days later, the trial court entered a stipulated judgment in favor of defendant in the amount of $67,500; however, the judgment provided that "[t]he parties retain all rights of appeal other than as to the amount of damages awardable to 814 on its breach of contract counterclaim."

Plaintiff now appeals as of right, contending that the trial court erred by granting summary disposition in favor of defendant on both plaintiff's complaint and defendant's counterclaim.

## II. STANDARDS OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). "De novo review means that we review the legal issue independently, without required deference to the courts below." *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019).

Defendant requested, and the trial court granted, summary disposition of plaintiff's complaint under MCR 2.116(C)(8). A motion under MCR 2.116(C)(8) tests the factual sufficiency of the complaint on the basis of the pleadings alone; all well-pleaded factual allegations are accepted as true and are construed in a light most favorable to the nonmoving party. *Kazor v Dep't of Licensing & Regulatory Affairs, Bureau of Prof Licensing*, 327 Mich App 420, 422; 934 NW2d 54 (2019). Summary disposition is properly granted when the plaintiff's claims are unenforceable as a matter of law and no factual development could justify recovery. *Long v Liquor Control Comm*, 322 Mich App 60, 67; 910 NW2d 674 (2017).

The trial court granted summary disposition on defendant's counterclaim under MCR 2.116(C)(10). A motion brought under MCR 2.116(C)(10) tests the factual sufficiency of the complaint in light of the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012).

"Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). A genuine issue of material fact exists when the record reveals an issue upon which reasonable minds might differ. *Id.* On appeal, a reviewing court must consider the pleadings, admissions, and other evidence in the light most favorable to the nonmoving party. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). The proper interpretation of a contract is a question of law that is also subject to de novo review by this Court, *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008), as are questions of statutory interpretation, *McQueer v Perfect Fence Co*, 502 Mich 276, 285; 917 NW2d 584 (2018).

A trial court's decision whether to grant leave to amend a complaint is reviewed for an abuse of discretion. If summary disposition is granted pursuant to MCR 2.116(C)(8), the trial court "shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence before the court shows that amendment would not be justified." MCR 2.116(I)(5); see also *Long*, 322 Mich App at 67 (leave to amend should be granted unless it would be futile).

### III. ANALYSIS

Plaintiff first argues that the trial court erred by granting summary disposition in favor of defendant on plaintiff's breach-of-contract and statutory violation claims, contending that the lease and license agreement required defendant to proceed under the summary proceedings statute. We disagree.

Pursuant to MCR 2.116(G)(5), only the pleadings may be considered when deciding a motion under MCR 2.116(C)(8). In an action based on a written instrument, a copy of the instrument must be attached to the complaint unless the instrument is "in the possession of the adverse party and the pleading so states . . . ." MCR 2.113(C)(1)(b). The attachment or reference to an attachment in the possession of the adverse party becomes "part of the pleading for all purposes." MCR 2.113(C)(2). In this case, plaintiff failed to attach a copy of either the lease or license agreement to the complaint. However, plaintiff attached the 2019 amendment to the lease and license agreement to the complaint, and defendant attached copies of both the lease and the license agreement to its motion for summary disposition. Recognizing the deficiency in the complaint, the trial court properly decided to consider the lease and license agreement submitted by defendant because the documents should have been attached to the complaint by plaintiff.

The trial court correctly observed that the wrongdoing alleged by plaintiff arose solely from defendant's demolition of the parking lot and defendant's failure to invoke the statutory eviction process. However, the clear and unambiguous language of the agreements between the parties did not require defendant to evict plaintiff from the parking lot solely through summary proceedings.

The lease provided that, in the event of a default by plaintiff, the landlord was entitled to terminate the lease and "may make its election known to tenant by delivery of a notice of termination. Such termination shall be immediately effective and Landlord shall be entitled to forthwith commence an action in summary proceedings to recover possession of the premises." The lease also provided that the landlord's "rights, remedies and benefits provided by this lease

-6-

shall be cumulative and shall not be exclusive of any other rights, remedies and benefits allowed by law." Under the lease, defendant reserved the right to make alterations to the building or common areas and to demolish improvements on the land surrounding the building "in its sole discretion without the consent of Tenant and the same shall not be construed as a breach of this Lease."

The license agreement granted plaintiff a revocable nonexclusive license to enter and utilize a portion of the parking lot, but did not prescribe any procedures for eviction of plaintiff, other than to state that the license was revocable with 60 days' notice to the licensee for nonpayment or failure to cure government violation notices. However, the license agreement explicitly provided that the license was "made in conjunction with the lease of Suite 240 and all other default provisions associated with said lease shall be applicable to this license."

A lease is interpreted as a contract, and a court must discern the intent of the parties from the language of the agreement. If the language is clear and unambiguous, a court must construe the language according to its plain and ordinary meaning and "interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Smith Trust*, 480 Mich at 24 (citations omitted). A license permits a licensee to act on the land of the licensor without having any permanent interest in the land and is generally revocable at will. *Kitchen v Kitchen*, 465 Mich 654, 658; 641 NW2d 245 (2002).

The unambiguous language of the lease did not restrict defendant to statutory summary proceedings as a remedy for breach of the lease or license agreement, but merely provided that defendant "may" terminate the tenancy "by delivery of a notice of termination" and that defendant would then "be entitled to forthwith commence an action in summary proceedings to recover possession of the premises." The word "may" is typically permissive, *Walters*, 481 Mich at 383, and the lease explicitly provided that defendant's remedies under the lease "shall be cumulative and shall not be exclusive of any other rights, remedies and benefits allowed by law." In any event, under the lease defendant had the right to demolish the parking lot, in its sole discretion, without breaching the lease. Moreover, the lease and license agreement had both expired on May 31, 2020, more than two months before defendant demolished the parking lot. Thus, the trial court correctly ruled that defendant "was not required under the terms of the Lease and/or License Agreement to initiate eviction proceedings in relation to Plaintiff's license to use the parking lot."

Plaintiff cites the early-termination-right attachments to both the lease and the license agreement, which provided that if the tenant failed to vacate the leased or licensed premises in the condition required in the lease, by the date stated in the termination notice, the tenant "shall be deemed to be a trespasser and Landlord and its successors and assigns may institute eviction proceedings against Tenant and Tenant hereby knowingly and irrevocably waives any and all defenses it may have to such eviction proceedings." However, as the trial court found, those provisions pertain solely to plaintiff's right to terminate the lease or license and do not govern defendant's obligations when seeking to terminate either agreement because of plaintiff's default in other circumstances.

The trial court also properly granted summary disposition in favor of defendant on plaintiff's claim that defendant had violated the antilockout statute, MCL 600.2918. Viewed in the light most favorable to plaintiff, the complaint alleged that defendant had served a notice to

quit the premises by August 31, 2020, and then notified plaintiff that construction on the parking lot would begin immediately. However, both the lease and the license had expired on May 31, 2020, the lease clearly reserved defendant's right to demolish improvements to the land surrounding the building, and the license agreement disclaimed the grant of any leasehold, easement, ownership, or other right or interest.

The antilockout statute provides a remedy to "[a]ny person who is ejected or put out of any lands or tenements in a forcible and unlawful manner," MCL 600.2918(1), or to "[a]ny tenant in possession of premises whose possessory interest has been unlawfully interfered with by the owner[,]" MCL 600.2918(2). Plaintiff satisfied neither requirement. Plaintiff has not alleged any forcible or unlawful ejection from the parking lot and, as the trial court found, "Plaintiff was not a tenant of the parking lot, nor did Plaintiff have any possessory interest in the parking lot." Thus, the trial court properly granted summary disposition in favor of defendant on plaintiff's claim that defendant had violated the antilockout statute.

The trial court also properly denied plaintiff's request for leave to amend the complaint. On appeal, plaintiff addresses this issue in a single paragraph, citing a single court rule, MCR 2.116(C)(8), citing no caselaw, and providing no explanation of how the facts warranted amendment of the complaint. An appellant may not give issues "cursory treatment with little or no citation of supporting authority." *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003). An appellant's failure to properly address the merits may constitute abandonment of the issue. *Id*.

Nevertheless, the trial court properly denied plaintiff's request for leave to file an amended complaint. When summary disposition is granted under MCR 2.116(C)(8), "the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." MCR 2.116(I)(5). "Shall" indicates a mandatory course of action; however, an amendment is not justified if it would be futile. *Liggett Restaurant Group, Inc v City of Pontiac*, 260 Mich App 127, 138; 676 NW2d 633 (2003). An amendment is futile if "(1) ignoring the substantive merits of the claim, it is legally insufficient on its face; (2) it merely restates allegations already made; or (3) it adds a claim over which the court lacks jurisdiction." *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*, 270 Mich App 110, 143; 715 NW2d 398 (2006) (citations omitted). An amendment is also futile when it only slightly elaborates on allegations already pleaded. *Wormsbacher v Seaver Title Co*, 284 Mich App 1, 9; 772 NW2d 827 (2009).

In this case, the trial court ruled that amendment would not be justified because plaintiff's "claims fail as a matter of law." We agree. In its response to the motion for summary disposition, plaintiff failed to identify the manner in which the complaint would be amended. Plaintiff did not seek to add new claims to the complaint and any new allegations would likely be nothing more than slight elaborations on allegations already pleaded. Indeed, on appeal plaintiff merely states that "the facts of this case warrant the opportunity to amend the underlying complaint." Thus, the amendment would be futile and the trial court properly denied plaintiff's request to amend.

Finally, plaintiff argues that, for the same reasons that it erred by granting summary disposition on plaintiff's claims against defendant, the trial court erred by granting summary disposition on defendant's counterclaim against plaintiff. We disagree.

-8-

Because the parties stipulated to the amount of damages in the trial court, that amount is not at issue on appeal. In its opinion and order granting summary disposition in favor of defendant under MCR 2.116(C)(10), the trial court ruled that "no genuine issue of material fact exists that Plaintiff breached the parties' Lease Agreement by failing to make rental payments thereunder." On appeal, plaintiff's sole argument on this issue is that defendant "completely ignored the summary proceedings statute in evicting Appellant from the leased property."

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). As previously addressed, in this case the lease did not restrict defendant to statutory summary proceedings as a remedy for breach of the lease or license agreement, but merely provided that defendant "may" terminate the tenancy "by delivery of a notice of termination" and that defendant would then "be entitled to forthwith commence an action in summary proceedings to recover possession of the premises." The word "may" is typically permissive, *Walters*, 481 Mich at 383, and the lease explicitly provided that defendant's remedies under the lease "shall be cumulative and shall not be exclusive of any other rights, remedies and benefits allowed by law." Moreover, the summary proceedings statute itself provides that "the remedy provided by summary proceedings is in addition to, and not exclusive of, other remedies, either legal, equitable or statutory." MCL 600.5750. Plaintiff does not contest the trial court's finding that it failed to pay rent as required under the lease and has failed to establish that defendant breached the lease. Thus, there is no genuine issue of material fact and the trial court properly granted summary disposition in favor of defendant on its counterclaim.

## IV. CONCLUSION

Because neither the lease nor the license agreement required defendant to proceed under the summary proceedings statute and plaintiff had no possessory interest in the parking lot, the trial court did not err by granting summary disposition in favor of defendant pursuant to MCR 2.116(C)(8) on plaintiff's complaint and pursuant to MCR 2.116(C)(10) on defendant's counterclaim.

Affirmed.

/s/ David H. Sawyer
/s/ James Robert Redford